**UNITED STATES of America, Appellee,**

v.

**Mohammad Haleem KHAN, Defendant–Appellant.**

**No. 1067, Docket 87–1479.**

United States Court of Appeals, Second Circuit.

Argued May 5, 1988.

Decided Sept. 7, 1988.

Robert E. Precht, Legal Aid Society, New York City, for defendant–appellant.

Robert J. Cleary, Asst. U.S. Atty. for S.D. New York (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., John F. Savarese, Asst. U.S. Atty., of counsel), for appellee.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Mohammad Haleem Khan appeals from a judgment of the Southern District, Daronco, *Judge*, convicting him after a plea of guilty of one count of wire fraud, 18 U.S.C. § 1343. He was sentenced, *inter alia*, to thirty months' imprisonment, a $1,000 fine and $266,000 in restitution to the government. Khan argues here that his guilty plea and the subsequent conviction should be vacated because the district court violated Fed.R.Crim.P. 11(c)(1) by failing to inform him prior to accepting his guilty plea that the maximum sentence could include restitution to the government. We agree.

I.

On July 30, 1987, Khan was indicted in the Southern District of New York on 32

counts alleging violations of federal law arising from the performance of a contract between U.S. Materials Co., which Khan owned and ran from his home, and the United States Agency for International Development (AID). In 1983, the indictment charged, Khan had contracted on behalf of U.S. Materials to supply oral rehydration salts (which are used in developing countries in the treatment of dehydrated infants suffering from diarrhea and malnutrition) to AID in Peru. The contract called for the delivery by January 1, 1984 and March 1, 1984 of one million packets and 1.8 million packets, respectively, of oral rehydration salts. The indictment alleged that Khan knew that he would be unable to meet the required delivery schedule, made false statements to AID in order to obtain extensions of the contract deadline and knowingly employed grossly deficient production methods likely to produce defective products.

Counts One through Four charged Khan with having unlawfully caused the deaths of four Peruvian infants who had been treated with lethally defective oral rehydration salts Khan had delivered (18 U.S.C. §§ 2, 1112). Counts Five through Twenty–One and Twenty–Two through Twenty–Seven alleged that Khan had used interstate and foreign wire facilities and the United States mails, respectively, to defraud AID through misrepresentations and false statements (18 U.S.C. §§ 1341, 1343). Counts Twenty–Eight through Thirty–Two charged Khan with having made a series of false and fraudulent statements to AID, an agency of the United States, in connection with the oral rehydration salts contract (18 U.S.C. § 1001).

Khan appeared before Judge Daronco on August 7, 1987, to plead guilty to one count of wire fraud (Count Five of the indictment). The Assistant United States Attorney (AUSA) prosecuting the case indicated to Judge Daronco that the government had agreed, in exchange for Khan's guilty plea on Count Five, that it would not "make any specific recommendation as to any specific punishment," did not "intend to ask for any victim restitution," would dismiss the other charges against Khan, would not prosecute members of Khan's family in connection with the contract and would agree to the continuation of bail until sentencing.

During the guilty plea allocution, the AUSA stated the possible sentence range as consisting of up to five years in prison and a maximum fine of $250,000. Judge Daronco, after Khan had indicated his understanding of these maximum consequences of his plea, as stated by the AUSA, accepted the guilty plea and set sentencing for October 9. Judge Daronco did not allude to the possibility that restitution to the government or to the victims could be ordered as part of the sentence, nor did he correct the AUSA's error in stating the maximum fine provided for by 18 U.S.C. § 1343, which is not $250,000, but only $1,000.

Judge Daronco initially sentenced Khan to three years' imprisonment, two years' probation thereafter, one hundred hours of community service, a $1,000 fine, and a $50 special assessment. In addition, he ordered Khan to "pay full restitution to the United States Government" in the amount of $266,000. Khan moved on October 16 to stay the execution of, and to modify, the sentence, arguing in his supporting affidavit that the government had breached its plea agreement by asking for restitution. The AUSA responded that the government's promise not "to ask for any specific victim restitution ... related to the victims in Peru, not to the United States Government. Khan was made fully aware that the United States intend[ed] to seek reimbursement of the contract price in a civil lawsuit, if restitution were not ordered by the Court." On October 28, five days before Khan was due to be imprisoned, Judge Daronco denied Khan's motion for a stay of sentence, reduced the sentence by six months, to a term of 30 months, and eliminated the terms of probation. He did not modify the restitution order. We stayed execution of his sentence pending the determination of this appeal.

## II.

Fed.R.Crim.P. 11 contains specific instructions for the conduct of plea hearings.

Rule 11(c) is particularly explicit. In part, it requires that the court, before accepting a guilty plea, personally advise the defendant and determine that the defendant understands "the maximum possible penalty provided by law, ... *and, where applicable, that the court may also order the defendant to make restitution to any victim of the offense....*" Fed.R.Crim.P. 11(c)(1) (emphasis supplied). It is not disputed that Judge Daronco failed to comply with Rule 11(c)(1), since at no point did he mention restitution to the government or to the victims.

Rule 11(h) permits a deviation from the procedure required by Rule 11 to stand only if the variation does not affect the defendant's "substantial rights". Fed.R. Crim.P. 11(h). This "harmless error" rule is limited in its scope. In *United States v. Journet*, 544 F.2d 633, 636 (2d Cir.1976), we held that, "as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11. Otherwise the plea must be treated as a nullity."

We tempered this rule slightly in *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir.1977), holding that Rule 11 does not require the court to "[read] the specified items *in haec verba.* Congress meant to strip district judges of freedom to decide *what* they must explain to a defendant who wishes to plead guilty, not to tell them precisely *how* to perform this important task in the great variety of cases that would come before them."

The government's reliance on *Saft* is misplaced. Rule 11(h) has as its purpose the avoidance of further proceedings in cases in which the defendant could not be considered to have been prejudiced by the error in the plea allocution. For example, we recently held that Rule 11(h) did not require vacation of a guilty plea and conviction merely because the sentencing court failed to inform the defendant that a maximum special parole term of life could have been imposed. We ruled the court's failure was harmless because the court had advised him that the minimum special parole

term was three years and it sentenced the defendant to the three-year special parole term. *United States v. Gonzalez,* 820 F.2d 575, 580 (2d Cir.1987). Moreover, in *Saft* itself, the Rule 11 violations complained of involved merely the sufficiency of the court's advice to the defendant in its less-than-literal reading of the rule, rather than an undisputed omission from the plea allocution. A case such as that now before us, one concerning conceded failure to comply with part of Rule 11, is not a case of harmless error, but a case requiring strict adherence to the "detailed prophylactic check list" the rule provides. *United States v. Saft, supra,* 558 F.2d at 1081. *See also United States v. Michaelson,* 552 F.2d 472, 477 (2d Cir.1977).

Nor are we persuaded by the government's argument that, since Judge Daronco erroneously advised Khan that the maximum fine that could be imposed under 18 U.S.C. § 1343 is $250,000, rather than $1,000, Khan's decision to plead guilty was not prejudiced by the omission to advise him of the possibility of restitution in approximately the same amount. The government cites *United States v. Fentress,* 792 F.2d 461, 465 (4th Cir.1986), in support of this proposition, arguing that the mistaken assertion informed the defendant of the potentially serious financial repercussions of a guilty plea. (The government concedes that, under the *Fentress* analysis, Khan could convincingly argue for a reduction in the amount of restitution to $250,000).

*Fentress* need not advise our decision, however, as the plea allocution at issue in that case predated the 1985 amendment to Rule 11(c). Although the Court of Appeals for the Fourth Circuit opined in dictum in *Fentress* that the thrust of Rule 11(c)(1) as amended is merely to alert the defendant to the possible financial liability resulting from a plea of guilty, 792 F.2d at 465, we do not agree that a defendant's decision to plead guilty is governed solely by the aggregate amount of the potential punishment. It is possible that Khan might have reached a different decision had the proper maximum amounts of both fine and restitution been explained to him. For instance,

after having been incorrectly informed, Khan may have decided to take the chance that the court would not impose both a long jail term and the maximum fine. Had the financial liability been initially characterized as victim restitution, however, such a calculation might have been less likely. Since we do not know what constituted Khan's calculus for determining how to plead, we must afford him the opportunity to consider how to plead with a full and accurate understanding of the maximum sentence as provided in Rule 11(c).

Khan's plea of guilty is vacated and the conviction is reversed.