**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**John Charles FOX, Defendant–Appellant.**

**Nos. 88–1305, 88–2107.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1991.

Decided Aug. 15, 1991.

See also 941 F.2d 488.

Elsa Lamelas, Steven M. Biskupic, argued, Patricia J. Gorence, Stephen J. Liccione, and Matthew L. Jacobs, Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Jerry B. Kurz, argued and Kathryn Hall, Hall & Kurz, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

John Charles Fox met Robert "Meatball" Reiswitz when they were both incarcerated in Kettle Moraine State Prison in Wisconsin. The two lost touch, but ran into each other at a Milwaukee blood bank in May 1987. Evidently, they did more than reminisce about the good old days in prison or discuss their blood types. What followed from this renewed acquaintance was a robbery spree in the Milwaukee area during the summer of 1987. Reiswitz identified the businesses to be robbed and drove the getaway car; Fox pulled the jobs. On June 30, Fox entered the Lincoln Savings & Loan Association with a handgun and left with a lot of cash. Needless to say, he did not have an account. On July 3, Fox robbed Reliance Savings & Loan. He came back there for a second robbery on July 10 before returning home to Kentucky. He also hit the Marshall and Ilsley Bank in Glendale twice in July.

On July 27, Fox and Martha Rose Coffman, who lived just across the border in New Albany, Indiana, traveled up to Milwaukee; Reiswitz accompanied them on his motorcycle. The three rendezvoused at the Russell Road exit of I-94, where Reiswitz gave Fox and Coffman a rundown of how to rob the North Shore Savings and Loan Association in Milwaukee. Acting on Reiswitz's plan, Fox and Coffman robbed the bank on July 28. The three returned to their respective states after divvying up the loot.

On July 30, Fox and Coffman again drove up from Kentucky and Indiana to Milwaukee with Reiswitz. "Meatball" instructed them how to carry out a robbery of the Republic Savings & Loan. (One could speculate that this rag-tag "Bonnie and Clyde" gang might have played a small part in the current savings and loan crisis.) The next day, Fox and Coffman acted on Reiswitz's instructions and robbed the bank

at gunpoint. As before, they high-tailed it back to Kentucky and Indiana and, after a time, returned to Milwaukee for yet another meeting with Reiswitz. This trip, they were accompanied by Gary Reed, who had been threatened by Reiswitz into participating as the getaway car driver.

On August 6, 1987, Fox and Coffman entered Republic Savings. They grabbed some money, but dropped most of it on the floor. Also, while fleeing the bank, Coffman accidently shot herself in the arm. It was like a scene from "The Gang That Couldn't Shoot Straight."

The next job, however, proved to be Fox's total undoing. On August 11, 1987, he held up the North Shore Savings and Loan with his .32 caliber semi-automatic pistol "Rosco." A Milwaukee police officer was hidden in a closet behind the teller line and watched Fox and Rosco commit the crime. He also saw Rosco's barrel pointed in his direction. The officer pursued Fox, and shot him above the eye, in his eye, and in the back. Although Fox had pointed his gun at the officer, he never fired: Rosco was rigged not to shoot. Fox was taken into custody and the $33,683 nabbed during the robbery was recovered.

After his arrest and release from a hospital, Fox gave a statement to the Milwaukee police and to the FBI admitting the bank robberies, as well as the robberies of four convenience stores, three gas stations, a tavern, and a pizza parlor. He told the officers that Reiswitz had shown him a layout of Reliance Savings and had provided him with a .32 caliber pistol to commit the robbery. He also indicated that Reiswitz had driven the getaway car in most of the robberies and that they split the money equally.

On October 20, 1988, a federal grand jury charged Fox, Reiswitz, Reed, and Coffman with the North Shore and the two Republic Savings robberies in a 16–count superseding indictment. Fox was charged with conspiracy to execute armed bank robberies and to use firearms during crimes of violence in violation of 18 U.S.C. § 371, armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and use of fire-arms to commit crimes of violence in violation of 18 U.S.C. § 924(c). In addition, Fox, as a convicted felon, was charged with possession of a firearm in violation of 18 U.S.C. § 922(g). On October 23, 1987, the United States filed an information invoking the enhanced penalty provisions of 18 U.S.C. § 924(e)(1), which provides that a convicted felon who violates 18 U.S.C. § 922(g) and who has three previous convictions for violent felonies must be imprisoned for a minimum of fifteen years.

Fox faced a total of 225 years in prison, with fifty years mandatory, non-parolable, and consecutive to each other. He entered into a written plea agreement by which he reduced his maximum exposure to forty-five years, and his mandatory minimum consecutive sentence from fifty to twenty years. In exchange for the government's dismissal of the remaining counts, Fox agreed to plead guilty to carrying a firearm in the commission of the Republic Savings & Loan robbery on August 6, 1987, armed bank robbery of the North Shore Savings & Loan on August 11, 1987, and to being a previously convicted felon in possession of a firearm. Fox also admitted that he had three previous burglary convictions, thereby triggering the penalty enhancement provision on his plea to possession of a firearm. Fox also agreed to cooperate with the government and to testify truthfully as its witness before the grand jury and at any subsequent trials.

On December 14, 1987, Fox entered his plea of guilty pursuant to the plea agreement. The court asked him to describe in his own words the crimes to which he was pleading and what he understood the penalties for those charges to be:

COURT: The [sic] Count 13 charges you with the use of a firearm in connection with the commission of Republic Savings and Loan robbery; is that correct?

FOX: That's correct, Your Honor.

COURT: All right. Now, with reference to Count 13, what do you understand the maximum penalties to be for that offense?

Fox: Five years imprisonment is mandatory, and—and I may obtain probation or parole—may not obtain, excuse me.

\* \* \* \* \* \*

Court: All right. And with reference to Count 14, what do you understand the maximum penalties to be for the armed bank robbery charge that occurred on August 11th?

Fox: 25 years imprisonment, a maximum fine of $250,000, plus assessment of $50.

Court: All right. And with reference to Count 16, what do you understand the maximum penalties to be?

Fox: Life imprisonment. 15 years to life imprisonment.

\* \* \* \* \* \*

Court: Has anybody made any predictions to you to what the Court's actual sentence will be in this case?

Fox: No.

Plea Hearing Transcript at 9–11. The court also asked Fox to describe in his own words his participation in the crimes. Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court apprised Fox of the fundamental rights he was surrendering in pleading guilty: the right to plead not guilty, the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront his accusers. The court failed to admonish Fox that payment of restitution could be made a requirement of the sentence resulting from his plea of guilty. Before accepting his plea, it did admonish him that he could be liable for a hefty fine:

Court: And you also understand on each of these three counts, you're subject to a fine of $250,000 on each count. Do you understand that makes a total fine potential of $650,000? Do you understand that?

Fox: Yes, I do, Your Honor.

Plea Hearing Transcript at 13.

In addition to Fox, Coffman and Reed also pleaded guilty. As a condition of their plea agreements, all three testified as government witnesses at Reiswitz's trial. He was convicted of conspiracy, aiding and abetting armed bank robberies, and aiding and abetting the commission of a crime of violence with a firearm. On February 28, 1991, this court heard oral argument of Fox and Reiswitz's separate appeals. We affirmed Reiswitz's conviction in an opinion issued this day. *See United States v. Reiswitz*, 941 F.2d 488 (7th Cir.1991).

Fox thus fulfilled his end of the bargain. When it came time to sentence him, the court noted that his testimony at Reiswitz's trial had been "factual and truthful." Nevertheless, the court sentenced Fox to the maximum twenty-five years' imprisonment for armed bank robbery to be followed by the mandatory, non-parolable five years' imprisonment for committing the North Shore Savings robbery with a gun. Fox received another fifteen years for being a felon in possession of a firearm for a total of forty-five years. The court ordered him to pay a special assessment of $150 and to make restitution of $18,432.37 before the expiration of his sentence, to be reduced by any amounts paid by Fox's co-defendants. (Although almost $72,000 had been taken in seven bank robberies, this $18,432.37 apparently was all that had not been recovered.) Since his incarceration, Fox has filed numerous motions to the district court asking it defer payment of restitution. The court repeatedly has treated these requests as motions for modification of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure and has denied them each time.

In February 1988, Fox filed his original appeal of his sentence and conviction, No. 88–1305. In June 1988, Fox filed a *pro se* notice of appeal of the district court's denial of his motion for an order to suspend for two years the payment of a special assessment and restitution, No. 88–2107. Both of Fox's appeals were consolidated for our consideration.

■ Fox attacks several aspects of his conviction and sentence. Not surprisingly, his first contention is that his plea of guilty must be vacated because the district court failed to inform him, pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, that payment of restitution might be

484

part of his sentence when he pleaded guilty He also argues that, in ordering him to pay restitution, the district court failed to consider his financial condition or the needs of his dependents.

A valid guilty plea should represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A district court may not accept a plea unless it is made "voluntarily, after proper advice, with full understanding of the consequences." *United States v. Wetterlin,* 583 F.2d 346, 349–50 (7th Cir.1978), cert. denied, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Rule 11 of the Federal Rules of Criminal Procedure sets forth the particular admonishments that must be given to insure that a federal criminal defendant has a full understanding of the consequences of pleading guilty. In particular, Rule 11(c)(1) states that before accepting a guilty plea, the court must address the defendant personally in open court and inform him that he might be ordered to make restitution to his victim.

■ In *United States v. Peden,* 872 F.2d 1303, 1307 (7th Cir.1989), as in this case, the sentencing court failed to advise the defendant of the possibility that the court might order him to pay restitution to a bank. We held there that the court's failure to comply with Rule 11(c) was harmless because the record was replete with references to the defendant's awareness that he might have to make restitution. 872 F.2d at 1307. Here, too, the record establishes that Fox understood the charges against him and the direct financial consequences of his plea. When the district court asked him if he understood that he faced a total fine potential of $650,000, Fox answered in the affirmative. When the sentencing court fails to apprise a defendant of the possibility of restitution but the defendant has notice of a possible fine in excess of the amount of the restitution ultimately ordered, the court's failure to raise the possibility of restitution is harmless error. *See United States v. Miller,* 900 F.2d 919,

921 (6th Cir.1990) (defendant faced $500,-000 in fines and paid $465,272.98 in restitution); *United States v. Stumpf,* 900 F.2d 842, 845 (5th Cir.1990) (defendant faced $60,000 in fines and paid $11,066.85 in restitution); *United States v. Pomazi,* 851 F.2d 244, 248 (9th Cir.1988) (no surprise or prejudice by imposition of $64,229 in restitution when defendant told of potential liability of $500,000); *United States v. Fentress,* 792 F.2d 461, 465 (4th Cir.1986) (court warned defendant of a possible $40,000 in fines; restitution order was $38,000).

Courts are not unanimous on this point. In *United States v. Corn,* 836 F.2d 889, 895 (5th Cir.1988), the appellate court viewed the sentencing court's general statement that it could sentence defendant however it saw fit insufficient to put him on notice that he might be ordered to pay more than $6,000,000 in restitution. Given the amount, the court's conclusion is hardly surprising. More problematic is *United States v. Khan,* 857 F.2d 85 (2nd Cir.1988). There, the order of restitution ($266,000) came somewhat out of the blue. The prosecution previously indicated to the court that it did not intend to ask for restitution and, prior to accepting the guilty plea, the district court failed to inform the defendant that the maximum sentence could include restitution. The prosecutor had stated, however, that the defendant could be liable for a *fine* of $250,000. (In truth, the prosecutor was wrong: the statute provided for a maximum fine $1,000. The sentencing judge failed to correct the prosecutor's error.) In vacating the guilty plea and reversing the conviction, the appellate court stated that it did not agree that "a defendant's decision to plead guilty is governed solely by the aggregate amount of the potential punishment," *id.* at 87, because the defendant "might have reached a different decision had the proper maximum amounts of both fine and restitution been explained to him." *Id.*

The best course is for the district court to spell out the defendant's potential liability for both fines and restitution. The failure to do so, however, is not necessarily fatal to the validity of a plea. Fed. R.Crim.P. 11(h) states that "[a]ny variance

from the procedures required by this rule which does not affect substantial rights shall be disregarded." Given the fact that Fox was warned that he might have to pay $650,000 and ultimately was ordered to pay $18,432.37—the exact amount of the unrecovered proceeds of the bank robberies— we cannot say that the district court's failure to comply with the formal requirements Rule 11 resulted in an unfair proceeding or a miscarriage of justice. Literal compliance with the Rule is not required. In *McCarthy v. United States*, 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 1171–72 n. 20, 22 L.Ed.2d 418 (1969) (citation omitted), the Supreme Court stated that "[m]atters of reality, and not mere ritual, should be controlling." In examining whether the admonition requirements set forth in Rule 11 were complied with, we consider "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Ray*, 828 F.2d 399, 405 (7th Cir. 1987) (citation omitted), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). Looking at the totality of circumstances here, we are convinced that Fox's decision to plead guilty was not prejudiced by the court's failure to advise him of the possibility of restitution.

■ We similarly reject Fox's argument that, in ordering him to make restitution, the district court failed to consider his financial condition. It is true that, before ordering restitution, the district court failed to indicate on the record that it had taken Fox's financial status into account. The Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579, 3580 ("VWPA"), makes it mandatory for a sentencing court to consider the following factors before imposing restitution:

> the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, the financial earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3580(a). *See also United States v. Arvanitis*, 902 F.2d 489, 496 (7th Cir.1990) (Bauer, C.J.). Although the district court should consider these factors on the record, it need not always do so. In *Arvanitis*, we indicated that, "[a]though the VWPA does require the district court to make findings on the record, the requirement is applicable only when the court refuses to order full restitution." *Arvanitis*, 902 F.2d at 496. In Fox's case, the district court ordered full restitution, so it was not required to make findings on the record.

■ In any event, the record reveals that the district court was fully aware of Fox's various outstanding hospital bills, his financial condition, and his obligations when it ordered restitution. Prior to sentencing Fox, the court ordered a presentence investigation report. The report contained financial information about Fox and his dependents. At the sentencing hearing, Fox was given an opportunity to object to the report and to present evidence as to his need to support his dependents. At that time, he merely indicated that the report failed to include certain hospital bills, and that it misstated the number of his dependents. These changes were made. The court thus possessed the necessary information to consider the factors enumerated in the VWPA. Moreover, in ordering Fox to repay the entire amount of his ill-gotten gains, the district court did not abuse its discretion. The VWPA contemplates the imposition of full restitution to compensate the defendant's victims. *See Pomazi*, 851 F.2d at 248 (legislative history of the VWPA reveals that Congress intended the wrongdoer to restore the victim's losses completely). The $18,432.37 restitution order represented the actual, unrecovered proceeds of the crimes. *See United States v. McClellan*, 868 F.2d 210, 213 (7th Cir. 1989).

■ Fox's remaining arguments concerning the restitution issue are meritless and undeserving of further discussion. That leaves us with one last complaint regarding his guilty plea. Fox pleaded guilty to one count of violating 18 U.S.C. § 922(g), which provides that any person with three

prior convictions for robbery or burglary found in possession of a firearm shall receive a mandatory prison sentence of not less than fifteen years with no opportunity for parole. According to Fox, his plea was not a "voluntary and intelligent choice among the alternative courses of action," *Alford,* 400 U.S. at 31, 91 S.Ct. at 164, because, although the court ascertained that Fox understood that there was no parole on his five-year sentence for the Republic Savings job, it failed to probe his understanding of his parole ineligibility on the fifteen-year sentence for the North Shore Savings armed robbery.

With regard to this claim, suffice it to say that, although the judge did not verbally admonish Fox as to his parole ineligibility on the fifteen-year sentence, his ineligibility was spelled out in the written plea agreement that he signed. In addition, the constitution does not require that a defendant be furnished "with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). The advisory committees notes on the 1974 amendments to the Federal Rules of Criminal Procedure state that, in accepting a guilty plea, a judge is not required to inform a defendant about his parole eligibility and, in fact, such an admonition "may be so complicated that it is not feasible to expect a judge to clearly advise the defendant." Fed.R.Crim.P. 11(c) advisory committee's note. Fox's plea hearing may have been more complete, but any omissions were insufficient to merit the reversal of his conviction.

■ Fox also challenges the length of his sentence. He argues that the district court abused its discretion in imposing a sentence of forty-five years after Fox cooperated with the government by testifying against Reiswitz. Fox is under the mistaken notion that the United States Sentencing Guidelines apply in his case. Because Fox's crimes occurred before November 1,

1987, the effective date of the Guidelines, the Guidelines are inapplicable. *See* 18 U.S.C. § 3551; *United States v. Stewart,* 865 F.2d 115, 118 (7th Cir.1988). Pre-Guidelines sentencing courts are afforded wide discretion in determining what sentences to impose. *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. George,* 891 F.2d 140, 143 (7th Cir.1989). Our review, therefore, is somewhat limited: we will not reverse a pre-Guidelines sentence unless it exceeds the statutory limits or the district court abused its discretion. *United States v. Johnson,* 903 F.2d 1084, 1089 (7th Cir.1990).

■ In this regard, we note that, although Fox cooperated with the government, he was not a model citizen. He had spent much time in custody and was somewhat "incorrigible." Sentencing Hearing Transcript at 22. Prior to imposing sentence, the court commented on the fact that Fox had been charged with seven bank robberies during which he had jeopardized the lives of close to thirty people. *Id.* at 25. During one of the robberies, he pointed a gun at a police officer. In response to Fox's attorney's argument that the court should give Fox "some light at the end of the tunnel," the court responded that the light already had been provided by allowing Fox to plead guilty to only three of the sixteen counts with which he was charged. A sentencing judge properly may decide what weight to give the factors in each case. *United States v. Marquardt,* 786 F.2d 771, 781 (7th Cir.1986). It was not an abuse of discretion, therefore, for the district court to weigh Fox's bad record more heavily than the fact that he had cooperated with the government in one case. In view of the fact that the forty-five year sentence was within the statutory limits, we will not disturb it.

■ Finally, we come to Fox's desperate argument that his conviction and sentence violate the Double Jeopardy Clause of the fifth amendment, which states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The basis of his

claim is that he was charged twice for offenses occurring on August 11, 1987: once under 18 U.S.C. § 2113(a) & (d) (armed bank robbery), and once under 18 U.S.C. § 922(g) (convicted felon in possession of a firearm). Like Fox's other challenges, this one fails. Under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." The two offenses in question here require proof of entirely separate elements. The armed bank robbery statute provides:

Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association with intent to commit ... any felony affecting such bank, credit union, or in such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Title 18 U.S.C. § 2113(a). Subsection (d) of that same statute provides:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

The possession statute, on the other hand, provides:

It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Title 18 U.S.C. § 922(g).

It is obvious from a reading of these statutes that conviction of the offense under 18 U.S.C. § 2113(a) & (d) requires proof of elements not required for conviction under 18 U.S.C. § 922(g) and vice versa. The key elements in the federal armed bank robbery statute—the taking of money from a federally insured institution by means of force and violence or intimidation—are entirely absent from the felon-in-possession statute. Section 2113(a) & (d) requires that the government prove that the defendant assaulted or put in jeopardy the life of an individual, and that he do so by the use of a dangerous weapon or device. Unlike section 922(g), this "dangerous weapon or device" need not be a firearm, and certainly not a firearm in or affecting commerce. Also, an armed bank robbery may be committed by any individual, not just a convicted felon, a requirement of section 922(g). These fundamental differences in the proof required for conviction under these provisions confirm that the crimes at issue here satisfy the *Blockburger* test. *See United States v. McKinney*, 919 F.2d 405, 417 (7th Cir.1990). Besides, even if two statutes create the "same offense" under *Blockburger*, there is no violation of double jeopardy if, as here, Congress specifically authorized cumulative punishment. *See United States v. Powell*, 894 F.2d 895, 899–900 (7th Cir.1990).

For the foregoing reasons, the conviction and sentence of John Charles Fox are

AFFIRMED.