May 07, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1074

 UNITED STATES,

 Appellee,

 v.

 JULIO CESAR PADIN-TORRES,

 Defendant, Appellant.

 

 ERRATA SHEET

The opinion of this Court issued on March 16, 1993, is ammended
as follows:

On the cover sheet, the attorneys for the appellant should read
as follows: " Guilermo J. Ramos-Luina with whom Harry Anduze
 
Montano and Maria H. Sandoval were on brief for appellant.
 

March 16, 1993 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1074

 UNITED STATES,

 Appellee,

 v.

 JULIO CESAR PADIN-TORRES,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Jose Antonio Fuste, U. S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Aldrich, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 

 

 Guillermo J. Ramos-Luina with whom Harry Anduze Montano and
 
Maria H. Sandoval were on brief for appellant.
 
 Luis A. Plaza, Assistant United States Attorney, with whom
 
Daniel F. Lopez Romo, United States Attorney, was on brief for
 
appellee.

 

 March 16, 1993
 

 BOUDIN, Circuit Judge. Defendant Julio Cesar Padin
 

Torres ("Padin") pleaded guilty to three counts of an

indictment for offenses related to his operation of a

mortgage lending institution. Padin was sentenced to prison

and ordered to pay $825,000 in restitution to the government.

He now appeals, challenging these sanctions. For the reasons

that follow, we modify the restitution order and otherwise

affirm. 

 Padin was charged in a thirteen-count indictment with

conversion of federal funds, mail fraud, submission of false

statements, and obstruction of justice. 18 U.S.C. 641,

1341, 1001, 1515. The charges grew out of Padin's operation

of Prudential Mortgage Corporation ("Prudential"), a mortgage

lender participating as an "issuer" of securities guaranteed

by the Government National Mortgage Association, commonly

known as "Ginnie Mae." In addition to managing the

corporation, Padin was Prudential's president and principal

stockholder. 

 In accordance with its agreement with Ginnie Mae,

Prudential was required to make monthly payments of principal

and interest to holders of securities issued by Prudential

and guaranteed by Ginnie Mae. Prudential was also obligated

to turn over to individual investors lump sum payments by the

federal government for defaulted government-insured mortgages

issued by Prudential. Beginning in 1980 and continuing

 -2-

through 1987 Padin, in violation of the agreement with Ginnie

Mae, withheld payment of the lump sums collected from the

federal government on defaulted mortgages and owed to

individual investors. A portion of the funds was used to

cover the monthly dividends owed to all of Prudential's

Ginnie Mae investors, with the remainder being diverted to

corporate and personal bank accounts.

 Padin masked the scheme by representing to the

government that the monies paid for defaulted mortgages were

being passed onto investors. At the same time, he led

investors to believe that the mortgages in default were still

alive. The fraud came to light when Prudential began to

default on the monthly dividends. The resulting loss to the

government, excluding collateral expenditures, totaled

approximately $11.5 million, the amount paid out to Ginnie

Mae insured investors to cover Prudential's default. 

 Padin entered an initial plea of not guilty but later

changed his plea to guilty on one count each of conversion of

federal funds, mail fraud, and the filing of false

statements. The remaining counts were dismissed pursuant to

a plea agreement. As required by Rule 11, the district court

conducted a change of plea hearing. Fed. R. Crim. P. 11.

Before accepting his guilty plea, the district court advised

Padin, among other things, that he was subject to a maximum

total fine of $21,000--$1,000 on the mail fraud count and

 -3-

$10,000 each on the conversion and false statement counts.

At no time during the plea hearing did the district court

mention that an order of restitution was also a possibility.

 The sentencing hearing which followed later was largely

consumed by Padin's efforts to establish that much of the

diverted funds were used to keep Prudential afloat and only a

small portion of the total was diverted to Padin's personal

use. The court then imposed sentence. The sentence included

a 15-year term of imprisonment and an order compelling Padin

to pay $852,000 in restitution to the government. This

appeal ensued.

 Padin first contends that the district court in imposing

sentence relied on irrelevant and mistaken information. See
 

United States v. Curran, 926 F.2d 59, 61 (1st Cir. 1991)
 

(defendant has right not to be sentenced on the basis of

false information). Padin claims that the court improperly

considered allegations that he withheld disclosure of

accounting ledgers subpoenaed by the government, and that the

amount of losses claimed by the government was unsupported.

 A trial court has very broad discretion to decide what

information is relevant for sentencing purposes. United
 

States v. Geer, 923 F.2d 892, 897 (1st Cir. 1991). The so-
 

called "allegations"--that important ledgers were missing--

were supported by the testimony of a government auditor, who

further stated that the government's audit was hampered by

 -4-

the lack of access to the documents. Padin's failure to

produce the requested ledgers or plausibly account for their

whereabouts was a relevant circumstance that the district

court could consider in imposing sentence. See Roberts v.
 

United States, 445 U.S. 552 (1980) (trial court may properly
 

consider as a sentencing factor defendant's refusal to

cooperate with law enforcement officials).

 As to the amount of government losses, Padin did not

deny that the government had paid $11.5 million to Ginnie Mae

insured investors to cover Prudential's default. Rather,

Padin claimed that this figure overstated the loss to the

government because, according to Padin, he used some of the

converted federal funds to sustain mortgages that would

otherwise have fallen into default. As the district court

pointed out, however, the number of would-be defaults, if

any, could only be determined by reference to the ledgers

which Padin failed to provide. Under these circumstances,

the auditor's testimony as to the basic loss of $11.5 million

was sufficient. See United States v. Zuleta-Alvarez, 922
 

F.2d 33, 36 (1st Cir. 1990), cert. denied, 111 S.Ct. 2039
 

(1991). 

 Finally, Padin takes exception to the district judge's

reliance on a Sentencing Guidelines work sheet that was not

disclosed to Padin until after sentence was imposed.

Although Padin's offense was not governed by the Sentencing

 -5-

Guidelines, the district judge permissibly looked to certain

guidelines factors in determining Padin's sentence. See
 

United States v. Twomey, 845 F.2d 1132, 1135 (1st Cir. 1988).
 

The work sheet reflects that the district judge determined

that Padin had obstructed justice and abused a position of

trust, and that Padin was given no credit for acceptance of

responsibility. The obstruction finding was based on Padin's

withholding of the financial ledgers. 

 We find no error in the district court's use of the

undisclosed work sheet. To be sure, a defendant is entitled

to notice of factual information that will affect his

sentence as well as an opportunity to respond, see United
 

States v. Hernandez, 896 F.2d 642, 644 (1st Cir. 1990), but
 

Padin was afforded this right. While the work sheet itself

was not disclosed prior to sentencing, Padin had ample notice

of the underlying negative information reflected in the

document.1 Additionally, the parties were advised well

ahead of sentencing that the district court would consider

the Sentencing Guidelines in imposing sentence. As for

acceptance of responsibility, it is a mitigating factor and

 

 1The charge that Padin impeded justice by withholding
accounting ledgers was set forth as a count in the indictment
and reiterated in the pre-sentence report released to Padin
in advance of sentencing. The pre-sentence report also
contained the probation officer's assessment that Padin had
abused a position of trust.

 -6-

it was up to Padin's counsel to raise the issue with the

district court if Padin hoped to obtain credit on this score.

 In addition to attacking his sentence as a whole, Padin

challenges the restitution order on several grounds. The

principal ground is that the district court, in taking

Padin's guilty plea, neglected to first inform him that

restitution could be imposed as part of his sentence. Fed.

R. Crim. P. 11(c)(1) provides that in addition to much else,

the court must tell the defendant prior to his plea of the

maximum penalties, including "when applicable, that the court

may also order the defendant to make restitution to any

victim of the offense." The government concedes that this

warning was not given.

 This objection is raised for the first time on appeal.

Padin's counsel asserts that he was caught off guard:

restitution was not mentioned until the judge imposed

sentence at the conclusion of the sentencing hearing, and

final judgement was entered that same day. The error is not

disputed, and is apparent on the face of the record without

further findings. Rule 11 objections, so far as they affect

the "knowing" character of the plea, are treated with extra

solicitude. United States v. Parra-Ibanez, 936 F.2d 588, 593
 

(1st Cir. 1991). Under all of the circumstances, we will

consider the issue under the "plain error" doctrine.

 -7-

 The government says that the error, even if plain, was

not prejudicial because Padin must have known that

restitution was an issue, given the attention devoted to the

amount of the government's loss. Most of that attention

occurred after the plea was taken. More important, the

amount of the loss was clearly pertinent to the severity of

the prison term, so there was good reason for this attention

regardless of restitution. Cf. U.S.S.G. 2B1.1(b)(1)(1992).
 

If the government could show from the record that at the time

of his plea Padin actually knew that restitution was a

possibility, this would be a different case. It has not done

so.

 The more difficult problem stems from the warning given

to Padin before his plea that $21,000 in fines might be

imposed. A number of circuits have held that a warning of

fines can render harmless the failure to warn of restitution,

at least so long as any payments actually ordered do not

exceed the figure stated to the defendant at the time of his

plea. E.g., United States v. Fox, 941 F.2d 480 (7th Cir.
 

1991), cert. denied, 112 S. Ct. 1190 (1992); United States v.
 

Miller, 900 F.2d 919, 921 (6th Cir. 1990). The Second
 

Circuit has taken the opposite view, reasoning that a

defendant might sometimes decide not to plead guilty if he

knew that restitution, and not just a fine of comparable

amount, was possible. United States v. Khan, 857 F.2d 85 (2d
 

 -8-

Cir. 1988), modified on reh'g, 869 F.2d 661 (2d Cir. 1989),
 

cert. denied, 111 S. Ct. 682 (1991).
 

 In our view, whether an omitted Rule 11 warning is

prejudicial or harmless turns on the circumstances and we see

no reason to lay down a general rule. In this case, no

reason has been suggested to us why Padin's choice to plead

would have been different if he had been told that $21,000

might be imposed as restitution, rather than as a fine.

Indeed, usually restitution is the more attractive label from

the defendant's standpoint, since it reduces the defendant's

civil liability to the victim. In this case, we think the

Rule 11 violation, although plain, was also harmless to the

extent of $21,000 and harmful beyond that amount. Since

Padin had been told at the plea hearing that this was the

maximum fine on all three counts, warning of a much larger

amount could reasonably have affected his decision to plead.

The government now says that Padin was actually subject to a

fine of $250,000 on each count, but no one claims that he was

so advised at the time he pled.

 The question remains whether a remand is required. The

government has made plain in its brief that it prefers to

retain the guilty plea even at the cost of losing any

restitution. This is an understandable choice, especially

because the government may still have an independent civil

claim against Padin for its losses. At the same time, the

 -9-

choice of sentence is normally a matter for the district

court. In theory, had it known that the restitution ordered

was unavailable, the district court could have chosen to

impose a longer prison sentence--the maximum was 20 years--or

even given Padin a corrected warning as to sanctions,

allowing him at the same time to withdraw his guilty plea if

he chose.

 In this case, we think a remand would be a useless

formality. The government has made it clear that annulling

or reducing the restitution ordered is its preferred outcome

if the court finds prejudicial error. We cannot imagine that

the district court would increase the existing fifteen-year

sentence, let alone reopen the guilty plea, simply because

the amount of direct restitution is reduced and the

government remitted to a civil suit. Padin himself has no

basis for complaint since under the modified judgment he is

obliged to pay no more than he was warned of at the time of

his guilty plea. 

 Padin's brief contesting his sentence contains many

separate arguments, some of which overlap while others are

mooted by our resolution. We have addressed Padin's

principal contentions and considered the others without

finding further error. The judgment is modified by reducing
 

the restitution ordered to $21,000, and is otherwise

affirmed.
 

 -10-