In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4115

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES T. WENDT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 CR 30103—**Michael J. Reagan**, *Judge.*

ARGUED SEPTEMBER 13, 2006—DECIDED OCTOBER 19, 2006

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* James Wendt was charged with possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He filed a motion to quash his arrest and suppress the evidence obtained during the search of his car, which was denied. Thereafter, Wendt entered a conditional guilty plea. The denial of his motion to suppress is the subject of this appeal. We affirm.

On July 22, 2004, the Drug Enforcement Administration, with the help of local law enforcement agencies, established a drug checkpoint along Interstates 55/70 near Collinsville, Illinois. Before the Black Lane exit, the DEA posted signs indicating that a drug checkpoint lay ahead. Further down

the highway, beyond the Black Lane exit, officers stationed two unoccupied squad cars as decoys. Thus, the Black Lane exit appeared to be the last and only chance to avoid the checkpoint. However, the actual checkpoint was at the end of the Black Lane exit ramp.

On July 22, 2004, Granite City Police Officer Michael Parkinson was positioned on an overpass of Interstates 55/70 near Black Lane Road in Collinsville. He was seated in a Jeep Cherokee that sat higher than an average passenger vehicle. From his vehicle he used binoculars to observe the eastbound lanes of Interstates 55/70. At the motion to suppress hearing, Officer Parkinson testified that from this vantage point, he saw a white Ford Expedition operated by Wendt cross two lanes of traffic to exit at Black Lane Road without using a turn signal. This constituted two traffic offenses in violation of 625 ILCS 5/11-804: crossing two lanes of traffic without using a turn signal and entering the Black Lane exit ramp without using a turn signal.

Officer Parkinson reported his observations to police officers, including Officer Boerm, who were positioned at the top of the exit ramp. Wendt's vehicle was ultimately stopped by officers at that location. Officer Parkinson testified that the only vehicles that were stopped at the Black Lane Road exit were ones that had committed traffic violations.

Collinsville Police Officer Jon Brett Boerm was working at the top of the exit ramp near the intersection of Interstates 55/70 and Black Lane Road. At this location, Officer Boerm received the aforementioned radio communication from Officer Parkinson. Officer Boerm testified that he then observed the white Expedition on the exit ramp and noted that the vehicle was straddling the center line of the roadway, another violation of Illinois traffic law. Officer Boerm testified that he stopped the vehicle primarily based upon his observations but also on the basis of the traffic violations reported by Officer Parkinson.

As expected, Wendt's version of the facts differ. At the motion to suppress hearing, Wendt testified that he exited the highway because he "didn't want to have to deal with the police at all." He thought he would be pulled over because he "may have been speeding." Wendt testified that he crossed one lane of traffic on the interstate in order to reach the exit ramp but first turned on his signal. Wendt further testified that once he was off the exit ramp, he remained in the inner lane.

After stopping Wendt and obtaining his consent, the officers searched the car and discovered a hidden compartment with 19.6 kilograms of cocaine. Wendt was placed under arrest.

Once Wendt was in custody at the Collinsville police department, Officer Boerm issued a written warning and stop card to Wendt. Officer Boerm testified that the time of day he originally wrote on the written warning was probably 13:40 hours and that after issuing the warning to Wendt, he corrected the time to read 15:40. Officer Boerm testified that he often confused the 13 and 15 in military time, and that he confirmed the correct time by reviewing radio transmissions.

On August 17, 2004, Wendt was indicted for possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A). On October 25, 2004, Wendt filed the motion to quash his arrest and suppress the evidence, claiming that the officers lacked probable cause for the traffic stop. The district court denied the motion and found probable cause based on the traffic violations observed by the officers. Upon denial of the motion, Wendt entered a conditional guilty plea, reserving his right to appeal. The district court sentenced Wendt to 168 months of incarceration and a $1,000.00 fine.

## I.  Discussion

Wendt argues that the officers lacked probable cause to make a traffic stop. Specifically, he asserts that the officers' testimony was not credible and that the district court erred in accepting this testimony in support of its finding of probable cause. We review the district court's factual findings and credibility determinations with deference, unless clearly erroneous. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003). Reversal is warranted only when this Court is "left with the definite and firm conviction that a mistake has been made . . . such as a situation in which a district court credited exceedingly improbable testimony." *Id*. In other words, "we must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993) (*quoting United States v. Saunders*, 973 F.2d 1354, 1359 (7th Cir. 1992)).

Wendt argues that based on *City of Indianapolis v. Edmond*, 532 U.S. 31 (2000), the traffic stop was unreasonable because the officers lacked individualized suspicion. Moreover, Wendt asserts that the DEA established a "programmatic regiment" to stop and search cars with out-of-state license plates for drugs. An automobile stop will violate the Constitution if it is deemed "unreasonable" under the circumstances. *Whren v. United States*, 517 U.S. 806, 810 (1996). The decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Id*. Wendt's reliance on *Edmond* is misplaced.

In *Edmond*, the police established various drug checkpoints, where officers stopped and questioned the driver of every car that passed through. *Id*. at 35. The Supreme Court found that officers seized motorists without any particularized suspicion, a violation of the Fourth Amend-

ment. *Id.* In contrast, here, the traffic stop was conducted based on the officers' reasonable belief that traffic violations had occurred. Officers Parkinson and Boerm testified that they saw Wendt commit a total of three traffic violations: changing lanes without signaling; exiting a highway without signaling; and straddling the centerline of a two-lane road.

Wendt then argues that this testimony lacks credibility based on inconsistencies. Wendt first cites a portion of Officer Parkinson's testimony where he "refus[ed] to acknowledge that he worked as part of a drug interdiction detain" and instead characterized his assignment as "conducting traffic stops." He next points to the fact that Officer Parkinson was looking for traffic violations without a radar gun and seemingly targeted cars with out-of-state plates. Wendt claims that Officer Parkinson's credibility was undermined because the Officer testified that he saw Wendt fail to signal his lane change yet was unable to see Wendt's license plate. Wendt contends that this testimony indicates a lack of candor. Wendt also seeks to discredit Officer Boerm's testimony based on the timing of his issuance of a warning ticket. He argues that this "evinc[es] the absence of probable cause for the stop."

The trial judge makes credibility determinations. *Eddy*, 8 F.3d at 583.

> The judge has the best "opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements," as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record.

*United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir. 1993) (*quoting Churchill v. Waters*, 977 F.2d 1114, 1124 (7th Cir. 1992)) (emphasis omitted).

Here, the trial judge was in a better position than we are to assess whether the officers were being truthful, and we defer to his findings. The inconsistencies that Wendt identifies are minor and unpersuasive. The record supports the district court's factual findings that probable cause existed for the traffic stop. Nothing in the record leads to the conclusion that the district court credited "exceedingly improbable testimony." *Bass*, 325 F.3d at 850.

## II.  Conclusion

The credibility determinations upon which the district court based its denial of Wendt's motion to suppress evidence were not clearly erroneous. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

———————————————————

*Clerk of the United States Court of Appeals for the Seventh Circuit*