NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 3, 2010
Decided August 3, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2954

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | 1:07-CR-68-TLS |
| TAUREAN L. HAYDEN, *Defendant-Appellant*. | Theresa L. Springmann, *Judge*. |

**O R D E R**

Taurean Hayden pleaded guilty to possessing with intent to distribute 500 or more grams of cocaine, *see* 21 U.S.C. § 841(a)(1), and carrying a firearm in relation to drug trafficking, *see* 18 U.S.C. § 924(c). In his plea agreement, Hayden waived his right to appeal the conviction and sentence but reserved his right to appeal the district court's denial of his motion to suppress evidence recovered from his car during a traffic stop, as well as the drug quantity attributable to him. The district court sentenced him to 188 months for the drug offense and a consecutive term of 60 months for the firearm offense. Hayden filed a notice of appeal. His appointed counsel, however, moves to withdraw because he has concluded that any appellate argument would be frivolous. *See Anders v. California*, 386 U.S. 738 (1967). Hayden opposes counsel's motion. *See* CIR. R. 51(b). We review only those potential issues

identified by counsel in his facially adequate brief and by Hayden in his response.  *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

On March 9, 2007, police conducted surveillance of a house on Oliver Street in Fort Wayne, Indiana.  Parked in front of the house was Hayden's Grand Prix.  Three times, a different car pulled up to the house, stayed for only a few minutes, and as each car drove away, it was stopped by police, who arrested the driver for drug possession.  One of those drivers, DeShawn Burnett, dropped a kilogram of cocaine as he attempted to flee the police.

Next, detectives followed Hayden leaving the house in the Grand Prix.  They saw him drive evasively and commit several traffic violations.  Detective Darrick Engelman, who had been in continuous radio contact with the detectives conducting surveillance, effected a traffic stop.  The detective smelled the odor of burnt marijuana emanating from Hayden's car, so he placed Hayden in the back of the squad car.  The detective asked Hayden for his consent to search the car, but Hayden refused.  Engelman then told Hayden that he would run a canine search, after which Hayden twice agreed to allow a search of the car.  Engelman found a small amount of what he believed to be marijuana on the floor of the front passenger seat.  After an officer searched the perimeter of the car with his drug-sniffing dog, the officers searched the trunk and interior of the car and found two hidden trap compartments, one of which contained two kilograms of cocaine in packaging similar to the cocaine discarded by Burnett.  A later search uncovered behind the radio a third trap compartment, which concealed a handgun.

Police next obtained warrants to search two houses in Fort Wayne that were connected to Hayden.  At a house on Knollcrest Avenue, officers found 4.01 grams of marijuana and mail addressed to Hayden.  At a house on Salt Trail Canyon Pass, officers found over $12,159 in cash in a kitchen drawer, $100,000 hidden in the fireplace, and $282,589 in the trunk of a Dodge Charger that was parked in the attached garage.  In the Charger, police also found Hayden's identification card.

Hayden moved, unsuccessfully, to suppress evidence recovered during the stop and search of the Grand Prix.  First, the court found that because Engelman had been in constant radio contact with the surveillance officers, Engelman's stop of the Grand Prix was supported by both reasonable suspicion of drug trafficking and probable cause to believe that he had committed traffic violations.  Second, the court concluded that Hayden's consent to the search was voluntary and, regardless, the smell of marijuana, the canine sniff, and the marijuana seen on the floorboard supported the search of the trunk and the hidden compartments.

Hayden entered a conditional plea of guilty, waiving his right to appeal the conviction and sentence with two exceptions; he reserved his right to appeal the district

court's denial of his motion to suppress and the drug quantity attributable to him. At sentencing the district court calculated the drug quantity based on the drugs discovered in Hayden's Grand Prix, the drugs and money found in the two houses, and the kilogram of cocaine discarded by Burnett. Over Hayden's objection, the court attributed to Hayden the cocaine discarded by Burnett given his arrest just minutes following his meeting with Hayden at the Oliver Street house, where Hayden appeared to be dealing cocaine. The court further overruled Hayden's objection to the inclusion of the marijuana and money found in the two houses; the court noted the testimony of Hayden's landlord that Hayden was renting the Knollcrest house and was purchasing the house on Salt Trail Canyon Pass on a land contract, and additional evidence that he was maintaining and using both residences. The court traced the money to drug proceeds, noting in particular the testimony of Hayden's cousin, who reported that he employed Hayden at his used car dealership for only $200 to $300 per week, and the testimony of DEA special agent, Howard Schneider, who reported that informants had identified Hayden as a multi-kilogram cocaine dealer. The court cited Schneider's testimony that a kilogram of cocaine sells for $25,000 at the high end, and concluded that the $394,748 found in the Salt Trail Canyon Pass house represented at least 15.7 kilograms of cocaine. Using the drug equivalency table of the Sentencing Guidelines, the court calculated that Hayden was responsible for the equivalence of 3,759 kilograms of marijuana, *see* U.S.S.G. § 2D1.1 cmt. n.10, yielding a guidelines range of 188 to 235 months for count one and an additional 60 months for count two. The court sentenced Hayden to the bottom of the guidelines range.

Hayden now wants his guilty plea set aside, so counsel properly considers whether he could challenge the voluntariness of his guilty plea or the adequacy of the plea colloquy. *See* FED. R. CRIM. P. 11; *United States v. Knox*, 287 F.3d 667, 671-72 (7th Cir. 2002). Counsel considers challenging the plea colloquy based on the district court's failure to advise Hayden of the court's authority to order restitution, or his right to present evidence at trial. *See* FED. R. CRIM. P. 11(b)(1)(K), (b)(1)(E). The court, however, did inform Hayden that he could be subject to fines totaling $4,250,000, and ultimately imposed no restitution or fine, so the court's omission of a warning about possible restitution was harmless. *See United States v. Fox*, 941 F.2d 480, 484 (7th Cir. 1991). The court also informed Hayden that he could compel the attendance of witnesses and testify in his own defense and that his decision not to testify or present any evidence could not be used against him at trial. His right to present evidence at trial was further covered in the written plea agreement, which he acknowledged having read and understood. Any challenge to the plea colloquy on this basis would therefore be frivolous. *See* FED. R. CRIM. P. 11(h); *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 85 (2004); *United States v. Driver*, 242 F.3d 767, 771 (7th Cir. 2001).

Hayden in his Rule 51(b) response, challenges the plea colloquy, contending that the district court incorrectly informed him of the applicable minimum sentence for his firearm

offense under § 924(c)(1). *See* FED. R. CRIM. P. 11(b)(1)(I). Hayden asserts that he is not subject to the consecutive 5-year minimum sentence as provided in § 924(c)(1)(A), relying on the Second Circuit's interpretation of § 924(c)(1)(A) in *United States v. Whitley*, 529 F.3d 150, 152-53, 158 (2d Cir. 2008). But in *United States v. Easter*, we expressly rejected the Second Circuit's interpretation of § 924(c)(1)(A). 553 F.3d 519, 524-25 (7th Cir. 2009), *cert. denied sub nom. McKay v. United States*, 130 S. Ct. 1281 (2010). The Supreme Court has since consolidated and granted certiorari in two cases to resolve this circuit split, *Gould v. United States*, 130 S. Ct. 1283 (Jan. 25, 2010) (No. 09-7073); *Abbott v. United States*, 130 S. Ct. 1284 (Jan. 25, 2010) (No. 09-479), but we have continued to endorse *Easter*'s reasoning. *See United States v. Boyd*, 608 F.3d 331, 333 (7th Cir. 2010). The district court correctly recited the law of this circuit as to the minimum sentence that Hayden faced for this count.

Counsel next considers whether Hayden could challenge the district court's denial of his motion to suppress, but correctly concludes that any challenge to the stop and search of the Grand Prix would be futile. As counsel notes, the traffic stop was supported not only by Hayden's presence at a known drug house and evasive driving, *see United States v. Fiasche*, 520 F.3d 694, 695, 697-98 (7th Cir. 2008); *United States v. Baskin*, 401 F.3d 788, 791-92 (7th Cir. 2005), but also by Hayden's multiple traffic violations, *see Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Kenerson*, 585 F.3d 389, 392 (7th Cir. 2009). The district court found that Detective Engelman was in constant communication with the officers who saw the violations and that they relayed that information to him, giving Engelman probable cause. *See United States v. Harris*, 585 F.3d 394, 400-01 (7th Cir. 2009). Counsel cannot identify anything in the record that would lead us to disturb the district court's findings of fact, which we would review only for clear error. *See United States v. Wendt*, 465 F.3d 814, 816 (7th Cir. 2006).

As for the search of Hayden's car, the district court found that Hayden's consent was voluntary and correctly explained that a defendant's consent is unaffected by an officer's statement that he will use a drug-sniffing canine. *See United States v. Taylor*, 596 F.3d 373, 376-77 (7th Cir. 2010); *United States v. Robinson*, 984 F.2d 911, 914 (8th Cir. 1993). In his Rule 51(b) response, Hayden focuses on the marijuana found on the passenger floor and contends that Detective Engelman concocted the story in order to arrest him and then search the car. He further contends that the search of the trap compartments exceeded the officers' authority for a search incident to arrest. But Hayden points to no evidence in the record that would directly call into question Engelman's testimony that he found marijuana in Hayden's car. And Hayden's arrest for possession of the marijuana supported a search of the car for evidence relevant to that offense. *See Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009). Moreover, the district court credited Engelman's testimony that he smelled marijuana at the outset—testimony that also provided the officers with probable cause to search the entire

car, including the trunk and any other compartments. *See United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006).

Counsel also explores but correctly rejects as frivolous a challenge to district court's determination of relevant drug quantity. The court appropriately found that the kilogram retrieved from Burnett was packaged similarly to the cocaine found in the Grand Prix, discovered immediately after Burnett briefly visited Hayden at a known drug house, and was reasonably viewed as part of the same course of conduct. *See* U.S.S.G. § 1B1.3(a)(2); *United States v. Stephenson*, 557 F.3d 449, 456-57 (7th Cir. 2009). And the court's findings that the drugs and money were Hayden's and that he had earned the money through drug trafficking were well supported by the evidence. Counsel also correctly concludes that any possible double counting that resulted from the money being converted to drug quantities would be harmless. Even if the district court had calculated the drug quantity based solely on the drug proceeds, *see United States v. Rivera*, 6 F.3d 431, 446 (7th Cir. 1993), Hayden's base offense level for the drug trafficking offense would remain the same, *see United States v. Edwards*, 581 F.3d 604, 612-13 (7th Cir. 2009); *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996).

Counsel also evaluates a potential challenge to Hayden's consecutive 5-year sentence under § 924(c)(1)(A) based on the Supreme Court's recent grant of certiorari. But counsel correctly deems any such argument precluded by Hayden's appeal waiver, which we would enforce. *See United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009); *United States v. Lockwood*, 416 F.3d 604, 608 (7th Cir. 2005).

Finally, Hayden asserts that counsel provided ineffective assistance by negotiating the plea agreement based on what he contends is an incorrect interpretation of the mandatory minimum sentence under § 924(c)(1)(A) and by failing to raise the issue in the district court at sentencing. But Hayden's appeal waiver bars all claims of ineffective assistance except those relating directly to the waiver or its negotiation. To the extent that Hayden's claim falls within this exception, we would decline to address it on direct appeal because claims of ineffective assistance are better suited to a collateral action under 28 U.S.C. § 2255, so that a fuller record can be developed. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.