*This opinion is subject to revision before publication*

**UNITED STATES COURT OF APPEALS
FOR THE ARMED FORCES**

———————

**UNITED STATES**
Appellee

**v.**

**Robert J. RICE, Colonel**
United States Army, Appellant

**No. 19-0178**
Crim. App. No. 20160695

Argued October 16, 2019—Decided May 21, 2020

Military Judges: Tyesha L. Smith and Andrew J. Glass

For Appellant: *Stephen I. Vladeck*, Esq. (argued); *Lieutenant Colonel Christopher Daniel Carrier* and *Captain Zachary Gray* (on brief).

For Appellee: *Major Catharine M. Parnell* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams,* and *Captain Allison L. Rowley* (on brief).

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY and Judges OHLSON and SPARKS, joined. Judge MAGGS filed a separate dissenting opinion.

———————

Judge RYAN delivered the opinion of the Court.[1]

Appellant possessed and distributed child pornography. The U.S. Attorney's Office for the Middle District of Pennsylvania thus prosecuted Appellant for violating 18 U.S.C. § 2252A (2006 & Supp. II 2008). A military convening authority subsequently prosecuted Appellant in the military justice system for this same conduct under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). This case thus presents the following issues: First, can the federal sovereign use two court systems, civilian and military, to bring

---

[1] We heard oral argument in this case at J. Reuben Clark Law School at Brigham Young University, Provo, Utah, as part of the Court's Project Outreach. *See United States v. Mahoney*, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

successive prosecutions for precisely the same conduct, where the only element the federal civilian statute includes that the military statute does not is jurisdictional? Second, what is the remedy for a successive prosecution? We conclude that the Double Jeopardy Clause bars such prosecutorial practices, *Grafton v. United States*, 206 U.S. 333 (1907), and that the remedy here is dismissal of the two possession specifications that were tried at the successive prosecution. We then remand the single distribution specification for further review by the lower court.

## I. Facts and Procedural History

In February 2013, Appellant's wife contacted local civilian law enforcement to report that she believed her husband was viewing and distributing child pornography. The subsequent investigation uncovered 10,000 images and videos of child pornography from several of Appellant's electronic devices, including a Hewlett-Packard (HP) laptop and an external hard drive. A digital forensic examination of these devices revealed that Appellant electronically shared some of these images with other internet users via Yahoo! Messenger.

The investigation led to two parallel prosecutions—one civilian and one military. On May 14, 2014, Appellant was indicted in the United States District Court for the Middle District of Pennsylvania for violations of 18 U.S.C. § 2252A(a)(2), (5). Count One of the federal indictment alleged that Appellant possessed material containing child pornography between August 2010 and January 29, 2013,[2] and Count Two alleged that Appellant received and distributed child pornography between January 23, 2013, and January 28, 2013.[3]

---

[2] 18 U.S.C. § 2252A(a)(5)(A)–(B), which delineates the elements of possession of child pornography, requires proof that the accused did knowingly possess or access with intent to view any material "that contains an image of child pornography" and that the material has been transported "using any means or facility of interstate or foreign commerce or in or affecting" interstate commerce or "was produced using materials that have been . . . transported in or affecting" interstate commerce.

[3] 18 U.S.C. § 2252A(a)(2)(A)–(B) delineates the elements of receipt and distribution of child pornography, requiring proof that the

On September 17, 2015, the military convening authority referred, inter alia, the following charges and specifications to a general court-martial as violations of clause 2 of Article 134, UCMJ: (1) that Appellant distributed six images of child pornography on the HP laptop between November 30, 2010 and December 6, 2010 (Charge II, Specification 2); (2) that Appellant possessed forty-five images of child pornography on the same HP laptop between November 25, 2010 and January 11, 2012 (Charge II, Specification 3); and (3) that Appellant possessed six videos of child pornography on his external hard drive on November 14, 2010 (Charge II, Specification 4).[4] These specifications referenced the definition of child pornography set forth in 18 U.S.C. § 2256 (2006).

In May 2016, Appellant was convicted in the district court on both counts—possession of child pornography and receipt and distribution of the same in violation of 18 U.S.C. §§ 2252A(a)(2), (5). The Government used both the HP laptop and external hard drive to prove that Appellant possessed "material that contains" child pornography.

These same materials were the basis for Appellant's military charges. Moreover, the dates alleged in the military specifications were wholly subsumed within the time frame charged at the district court: The civilian possession charge covered conduct spanning from August of 2010 to January 29, 2013, while the military specifications targeted Appellant's conduct on November 14, 2010, from November 30, 2010 to

---

accused did knowingly receive or distribute "any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer."

[4] The Article 134, UCMJ, offenses with which Appellant was charged required a finding that (1) Appellant knowingly and wrongfully possessed or distributed child pornography, and (2) under the circumstances, his conduct was "of a nature to bring discredit upon the armed forces."

December 6, 2010, and from November 25, 2010 to January 11, 2012.[5]

Consequently, on June 20, 2016, Appellant moved to dismiss the military specifications as barred by double jeopardy. The military judge denied the motion. Appellant then entered a guilty plea conditioned on the ability to appeal the military judge's denial of the motion. On October 24, 2016, the military judge, sitting as a general court-martial, convicted Appellant, pursuant to his pleas, of one specification of distribution of child pornography and two specifications of possession of child pornography, all in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for five years and a dismissal. The convening authority approved the dismissal and four years of confinement.

Appellant returned to the district court for sentencing on November 10, 2016,[6] where he moved to dismiss the possession charge (Count One), contending it was barred by double jeopardy as a successive punishment due to his sentence for the possession specifications at his court-martial. The Government did not oppose this motion. The district court dismissed Count One and sentenced Appellant to 142 months of imprisonment on the civilian distribution count (Count Two).

Appellant appealed the military judge's ruling on the double jeopardy issue to the United States Army Court of Criminal Appeals (ACCA). *United States v. Rice*, 78 M.J. 649 (A. Ct. Crim. App. 2018). The ACCA held that the possession specifications violated double jeopardy. *Id.* at 653–54. The conduct underlying Count One at the district court was possession of child pornography on the HP laptop and the external hard

---

[5] The conduct underlying the distribution charge in district court was wholly distinct from the court-martial distribution specification since it happened from January 23 to 28, 2013—more than a year later.

[6] In federal district court, findings and sentencing procedures are separated in time, often by a few months. *See Justice 101: Sentencing*, Office of the United States Attorneys, https://www.justice.gov/usao/justice-101/sentencing (last visited May 19, 2020). In the military, findings and sentencing are separate phases, but ordinarily occur together in time.

drive spanning the period of August 2010 to January 2013; the conduct underlying the military charges concerned the same materials and fell squarely within that time frame. *Id.* at 653. The ACCA reasoned that because double jeopardy would bar the Government from charging this conduct under clause 3 of Article 134, UCMJ, it would also prevent the Government from doing so under clause 2 of the same. *Id.* at 653–54. The ACCA nevertheless concluded that Appellant received his remedy for this violation when the district court dismissed the possession count prior to sentencing. *Id.* at 655–56.[7]

We granted Appellant's petition to review the following issue: "Whether the Double Jeopardy Clause of the Fifth Amendment requires dismissal of Appellant's convictions." As to the specifications under the charge alleging possession, we hold that it does.

## II. Discussion

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."[8] U.S. Const. amend. V. The prohibition against double jeopardy not only protects against multiple punishments for the "same offence," *United States v. Dixon*, 509 U.S. 688, 696 (1993) (internal quotation marks omitted) (citation omitted), but "shield[s] individuals from the harassment of multiple prosecutions for the same misconduct," *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1877 (2016) (Ginsburg, J., with whom Thomas, J., joined, concurring). It also "forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Brown v. Ohio*, 432 U.S.

---

[7] The ACCA declined to answer the question whether Appellant's "District Court conviction for possessing child pornography was a lesser-included offense of his court-martial conviction for distributing child pornography." *Rice*, 78 M.J. at 654 n.10; *see* discussion *infra* p. 14.

[8] The general bar on successive prosecutions is made particular in the military through Article 44, UCMJ, 10 U.S.C. § 844 (2012), and Rule for Courts-Martial (R.C.M.) 907(b)(2)(C).

161, 169 (1977). Whether a prosecution violates double jeopardy is a question of law that this Court reviews de novo. *See United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019).

The double jeopardy prohibition applies only where "the same act or transaction" is involved. *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also Ex parte Lange*, 85 U.S. (18 Wall.) 163, 168 (1873); *United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019) ("[S]eparate acts may be charged and punished separately."). In examining whether two statutory crimes are the "same offence" for purposes of the Fifth Amendment, courts apply the test articulated in *Blockburger*: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not."[9] 284 U.S. at 304; *see United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010) (observing *Blockburger* is the proper test in the military). Under *Blockburger*, if two offenses have the same elements, those offenses are the "same offence" and "double jeopardy bars . . . successive prosecution." *Dixon*, 509 U.S. at 696 (internal quotation marks omitted) (citation omitted). Courts determine whether two offenses are the same through a "strict facial comparison of the elements." *Coleman*, 79 M.J. at 103.

The Government does not argue that the charges in the district court and military court-martial were based on different conduct. Rather, it argues that because 18 U.S.C. § 2252A contains a jurisdictional element and Article 134, UCMJ, as charged, contains not that element, but the element that the conduct is "service discrediting," the charged offenses are not the "same offence" for purposes of the Fifth Amendment's prohibition on double jeopardy. While a strict application of *Blockburger* would support the Government's position, we reject the mechanical application of *Blockburger* to permit successive prosecutions by two distinct criminal apparatuses of the same federal sovereign under the circumstances presented in the instant case. Instead, we approach the application of *Blockburger* to the offenses in this case in light of: (1)

---

[9] This test is also used to determine whether one offense is a lesser included offense (LIO) of another and therefore barred by double jeopardy. *See, e.g.*, *Brown*, 432 U.S. at 168–69.

the sui generis nature of Article 134, UCMJ; (2) the Supreme Court's recent treatment of the jurisdictional element for Title 18 offenses in other contexts; and (3) the Supreme Court's decision in *Grafton*.

After considering these points below, we conclude that where the conduct and mens rea charged under Article 134, UCMJ, are proscribed by directly analogous federal criminal statutes, the jurisdictional element of the Title 18 offense is not considered for purposes of determining whether it is the same offense as, or an LIO of, the Article 134, UCMJ, offense.[10] *Cf. United States v. Leonard*, 64 M.J. 381, 383 (C.A.A.F. 2007) (permitting reference to the maximum punishment for a directly analogous federal statute even where the Article 134, UCMJ, specification did not include the relevant jurisdictional element).

### A. Military Jurisdiction and Article 134, UCMJ

In addition to state criminal systems, military members are subject to the concurrent jurisdiction of the federal civilian criminal system and the military justice system. *See* R.C.M. 201(d)(2) (2008 ed.) ("An act or omission which violates both the [UCMJ] and local criminal law, foreign or domestic, may be tried by a court-martial, or by a proper civilian tribunal, foreign or domestic, or, subject to R.C.M. 907(b)(2)(C) and regulations of the Secretary concerned, by both."); *see also Ortiz v. United States*, 138 S. Ct. 2165, 2174–75 (2018) ("[T]he jurisdiction of [courts-martial] overlaps significantly with the criminal jurisdiction of federal and state courts."). While the federal criminal system charges offenses under Title 18 of the U.S. Code, which offenses must be "connected to one of [Congress's] constitutionally enumerated powers" to confer jurisdiction, *Luna Torres v. Lynch*, 136 S.

---

[10] We emphasize here the narrow scope of our holding. Appellant was first tried in a federal civilian district court and subsequently tried in a court-martial—another adjudicative body of the same sovereign—for the same conduct under clause 2 of Article 134, UCMJ, which omitted the Title 18 offense's jurisdictional element. Our holding does not reach beyond the "unusual facts" of this case, and thus "does not extend to those situations where additional substantive elements distinguish an offense charged under Article 134, UCMJ, from another criminal offense." *Rice*, 78 M.J. at 654 n.7.

Ct. 1619, 1624 (2016) (noting one such power is Congress's "authority to regulate interstate commerce"), the military justice system charges offenses under Title 10, which depends only upon the status of the accused for jurisdiction. Article 2, UCMJ, 10 U.S.C. § 802 (2012); *see Solorio v. United States*, 483 U.S. 435, 450–51 (1987).

Article 134, UCMJ, the "General Article," is an expansive, flexible, and amorphous prosecutorial tool within the military justice system with no analog in Title 18. Intended to serve as a means for a military commander to meet and enforce the exigencies of military discipline, *see* William Winthrop, *Military Law and Precedents* 720–26 (2d ed., Government Printing Office 1920) (1895) (discussing the history, development, and construction of the General Article), it "requires a finding that (1) the accused did or failed to do certain acts," and (2), proof that Appellant's conduct was "to the prejudice of good order and discipline in the armed forces," "of a nature to bring discredit upon the armed forces," or a "crime or offense not capital." *Manual for Courts-Martial, United States* pt. IV, para. 60.b (2008 ed.); *see also Anderson*, 68 M.J. at 385. The General Article can thus be used to vindicate particular military interests—via the first two terminal elements—or to assimilate wholesale any Title 18 offense "not capital" into the military justice system using the third terminal element. The exceptionally broad statutory language and potential for abuse is balanced, in large part, by this Court's duty to constrain it. *Cf. United States v. Gleason*, 78 M.J. 473, 476 (C.A.A.F. 2019) (recognizing that the Supreme Court expects military appellate courts to act "as checks against [Article 134's] potentially over-expansive use" (citing *Parker v. Levy*, 417 U.S. 733, 752 (1974)); *see also Parker*, 417 U.S. at 754 (noting that the way this Court's predecessor construed the General Article and Article 133, UCMJ, "narrowed the very broad reach of the literal language of th[ose] articles").

All agree, and we cannot ignore, that double jeopardy would prohibit the successive prosecution of the military charges if the Government had charged these offenses under clause 3 of Article 134, UCMJ, alleging a violation of 18 U.S.C. § 2252A. That the Government understood this is clear, given its reference to 18 U.S.C. § 2256 for definitional purposes, but charging under clause 2 of Article 134, UCMJ.

But there is no evidence that Congress intended Article 134, UCMJ, to serve as a vehicle for the military to reprosecute Title 18 offenses tried in a federal civilian court simply by removing a jurisdictional element and charging it as a violation of clause 1 or 2. Such a scheme would only work if misconduct alleged under Title 18 and Article 134, UCMJ, vindicated separate interests, but *Grafton,* discussed *infra* pp. 11–12*,* specifically forecloses this possibility. *See* 206 U.S. at 353–55 (rejecting the notion that the accused "committed two distinct offenses,—one against military law and discipline, the other against the civil law").

The singular importance of this observation for limiting the strict application of *Blockburger* in the context of the intentionally capacious Article 134, UCMJ, is buttressed by the total lack of expressed intent of Congress to hold military members, and only military members, subject to prosecution for the same misconduct by two courts of the United States and any state court whose laws the misconduct violates.

## B. Jurisdictional Elements

Based on principles of federalism and comity towards state governments, federal jurisdiction over criminal offenses requires a federal nexus as an element of the offense, known as the "jurisdictional element." *Luna Torres*, 136 S. Ct. at 1624. Jurisdictional elements tie "the substantive offense ([e.g.], arson) to one of Congress's constitutional powers ([e.g.], its authority over interstate commerce), thus spelling out the warrant for Congress to legislate." *Id.* While the Supreme Court has not had occasion to address the importance of a jurisdictional element in the context of double jeopardy,[11]

---

[11] We of course agree that jurisdictional elements, like any other, need to be pleaded and proven, *Luna Torres*, 136 S. Ct. at 1630 (noting that jurisdictional elements "must be proved to a jury beyond a reasonable doubt"), and that Congress can and does criminalize the same conduct under different statutes based on different harms, *cf. Albernaz v. United States*, 450 U.S. 333, 343 (1981) (holding conspiracy to import and conspiracy to distribute marijuana, stemming from the same conduct, were not the same offense for double jeopardy purposes because importation and distribution of marijuana "impose diverse societal harms"). *See United States v. Rice*, __ M.J. __, __ (5 n.6) (C.A.A.F. 2020) (Maggs, J., dissenting).

it has considered and disregarded jurisdictional elements in other contexts. *See, e.g.*, *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (Mens rea does not apply to jurisdictional elements because they "do not describe the 'evil Congress seeks to prevent,' but instead simply ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct (normally, as here, through its Commerce Clause power)."); *Luna Torres*, 136 S. Ct. at 1625 (holding that a state crime was an aggravated felony like its federal counterpart even though it lacked the jurisdictional element); *Lewis v. United States*, 523 U.S. 155, 165 (1998) (noting the Assimilative Crimes Act does not apply "where both state and federal statutes seek to punish approximately the same wrongful behavior—where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations").

Moreover, in its most recent decision involving double jeopardy, the majority in *Gamble* "assumed, without deciding, that the state and federal offenses at issue . . . satisf[ied] the other criteria for being the 'same offence' under our double jeopardy precedent," 139 S. Ct. at 1964 n.1 (citing *Blockburger*, 284 U.S. at 304), though the state offense, Ala. Code § 13A-11-72(a) (2015), did not contain the jurisdictional element found in the federal offense, 18 U.S.C. § 922(g)(1) (2012). *See Gamble*, 139 S. Ct. at 1998 (Gorsuch, J., dissenting) (The "statute under which the federal government proceeded required it to prove no facts beyond those Alabama

---

But this fails to address the situation here, where the Government elected to recharge the same conduct under the amorphous Article 134, UCMJ, and claims it's not the same offense—or a greater or lesser included offense—because of the Government's ability to charge the conduct under clause 2, though *Grafton* holds that there are no different harms. 206 U.S. at 355. *Pereira v. United States*, 347 U.S. 1 (1954), is not to the contrary, as it neither stands for the proposition that jurisdictional elements must be included in every *Blockburger* analysis, nor did the Court there have reason to consider Article 134, UCMJ, at all. *See id.* at 9. Further, while the *Pereira* Court noted the interstate commerce element of § 2314, it did not employ that element in distinguishing between the two offenses. *Id.*

needed to prove under state law to win its conviction; the two prosecutions *were* for the same offense.").

While we assumed in *United States v. Roderick*, 62 M.J. 425 (C.A.A.F. 2006), that we could not disregard a jurisdictional element in conducting a multiplicity analysis, *id.* at 432, we did so without consideration of the Supreme Court's decision in *Lewi*s, 523 U.S. at 165. Moreover, in *Roderick*, we noted that the appellant had not "identified any authority which would allow this court to disregard a statutory element of a crime during a multiplicity analysis."[12] 62 M.J. at 432. However, since *Roderick*, such authority has emerged. Specifically, our later decision in *Leonard*, 64 M.J. at 385, and the Supreme Court's recent decisions in *Rehaif* and *Luna Torres* make clear that there is a distinction between substantive elements and jurisdictional elements. And we think those differences are valid ones when determining what constitutes the same offense for purposes of a double jeopardy analysis involving Article 134, UCMJ.

## C. Same Sovereign

Nor in assessing the blind application of *Blockburger* to the facts of this case can we ignore the *Grafton* decision, which stands for the unremarkable proposition that a single sovereign cannot escape double jeopardy's confines by successively prosecuting an accused for the same—or a lesser included—offense in two different judicial systems that draw their authority from the same source. 206 U.S at 352.

The *Grafton* Court considered whether the accused, an Army private stationed in the Philippines, could be prosecuted by the United States for homicide in federal court in the Philippine Islands after a general court-martial had already tried him for—and acquitted him of—a military charge for the same conduct. *Id.* at 341–42, 348–49. Attempting to dodge the double jeopardy bar to this subsequent prosecution, the government argued that Grafton had "committed two distinct offenses,—one against military law and discipline, the other against the civil law which may

---

[12] Multiplicity "is a concept that derives from the Double Jeopardy Clause." *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001) (internal quotation marks omitted) (citation omitted).

prescribe the punishment for crimes against organized society, by whomsoever those crimes are committed." *Id.* at 351. The Supreme Court rejected this argument, stating that although Congress "has the power to prescribe rules for the government and regulation of the Army, . . . these rules must be interpreted in connection with the" double jeopardy prohibition. *Id.* at 352. It also noted that court-martial jurisdiction "is not exclusive, but only concurrent with that of the civil courts." *Id.* at 348. Without applying a strict elements approach, the Supreme Court considered the identity and authority of the prosecuting parties and the unitary interest sought to be vindicated through the successive prosecutions.[13] *See id.* at 351–54. Of particular importance to the case at bar, the Supreme Court rested its decision not on a comparison of elements, but:

> upon the broad ground that the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government.[14]

*Id.* at 352.

### D. Conclusion and Application

It is strictly true that the 18 U.S.C. § 2252A and Article 134, UCMJ, offenses have different elements. But *Blockburger* must be applied in light of (1) the unique circumstances at play between Article 134, UCMJ, and any federal

---

[13] In contrast, the same misconduct can be the basis for prosecution under separate statutory provisions of different sovereigns because the same act, by transgressing the laws of two sovereigns, creates a "duality of harm." *Gamble*, 139 S. Ct. at 1967.

[14] Nor has the Supreme Court overruled *Grafton*, and any discussion of it at all has been limited to dicta. *See, e.g.*, *Dixon*, 509 U.S. at 708 n.13. Unless and until the Supreme Court rules differently, we follow *Grafton*'s unremarkable—though essential—holding in assessing how to apply the *Blockburger* test when comparing charges by the same sovereign for the same conduct under two court systems and two criminal codes of that sovereign.

crime covered under Title 18, (2) the treatment of jurisdictional elements by the Supreme Court in other contexts, and (3) the *Grafton* decision. To apply the test without consideration of these facts would be both myopic and at odds with the dangers against which the Double Jeopardy Clause seeks to protect—prosecutorial and penal excess.[15] *Ex parte Lange*, 85 U.S. at 173 ("[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it.").

### 1. The Possession Specifications

An application of the *Blockburger* elements test without considering the jurisdictional element in § 2252A reveals that that civilian possession offense is an LIO of the offense charged under Article 134, UCMJ. The Article 134, UCMJ, offense as charged wholly encompasses the civilian possession offense and requires the Government to additionally prove the conduct was service discrediting, thus making it the greater offense. The military possession specifications are thus barred by both Article 44, UCMJ, and the Fifth Amendment's Double Jeopardy Clause. *Compare* 10 U.S.C. § 934, *with* 18 U.S.C. § 2252A, *supra* notes 2–4.

### 2. The Distribution Specification

Appellant argues that his district court conviction for possessing child pornography was an LIO of his court-martial conviction for distributing child pornography, and thus the later distribution prosecution was barred by double jeopardy. *See Brown*, 432 U.S. at 169 ("Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense."); *see also Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018).

---

[15] The doctrine against unreasonable multiplication of charges is one bulwark against prosecutorial overreach within the military justice system, *see, e.g.*, *Quiroz*, 55 M.J. at 337, but it does nothing to guard against successive prosecutions by two arms of the same sovereign for the same conduct, separated by nothing more than a jurisdictional element that simply tethers the offense to one of Congress's enumerated powers.

The ACCA recognized that this was a "close question." *Rice*, 78 M.J. at 654 n.10 (citing *United States v. Dudeck*, 657 F.3d 424, 431 (6th Cir. 2011) (collecting cases; underlying facts dictate whether receipt and possession are separate chargeable offenses for double jeopardy purposes)); *see also id.* (citing *United States v. McElmurry*, 776 F.3d 1061, 1064–65 (9th Cir. 2015) ("Neither possession nor distribution of child pornography is necessarily a lesser-included offense of the other.")). Our lower courts have acknowledged the fact-intensive inquiry this question requires. *See, e.g.*, *United States v. Williams*, 74 M.J. 572, 575–76 (A.F. Ct. Crim. App. 2014) (suggesting the inquiry turns on whether additional steps separated his possession from the receipt and distribution of contraband images); *United States v. Purdy*, 67 M.J. 780, 781 (N-M. Ct. Crim. App. 2009) (same).

The ACCA declined to decide the issue, *Rice*, 78 M.J. at 654 n.10, reasoning that even if the district court possession charge were an LIO of the court-martial distribution charge, Appellant received all he was entitled to when the district court dismissed the possession count, *id.* As discussed below, we disagree. Given that answering the LIO question in the context of possession and distribution depends upon a fact-bound inquiry, we remand this question to the ACCA; the military distribution charge is therefore not considered for purposes of discussing the remedy for a successive prosecution.

### 3. Remedy

The ACCA held, and the Government argues, that Appellant received his remedy for any double jeopardy violation when the district court dismissed the possession count. *Rice*, 78 M.J. at 655–56. We disagree. Regardless of the district court's action, Appellant's court-martial was a successive prosecution barred by double jeopardy. Accordingly, the possession specifications must be dismissed.

The Double Jeopardy Clause "is a guarantee against being twice put to trial for the same offense." *Abney v. United States*, 431 U.S. 651, 661 (1977); *see also Green v. United States*, 355 U.S. 184, 187 (1957) ("The constitutional prohibition against 'double jeopardy' was designed to protect an in-

dividual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."). A successive prosecution is a distinct wrong because it forces an accused "to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney*, 431 U.S. at 661; *see also Green*, 355 U.S. at 187–88 ("[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."). Where the State "make[s] repeated attempts to convict an individual for an alleged offense," *Abney*, 431 U.S. at 661, "the only available remedy is the traditional double jeopardy bar against the retrial of the same offense." *Currier*, 138 S. Ct. at 2153 (plurality opinion) (rejecting issue preclusion as acceptable remedy for double jeopardy violations). The ACCA's decision and the Government's argument to this Court misapprehend the dual harms against which double jeopardy protects and the effect of a violation.

The timing and manner in which events unfolded establish Appellant's court-martial as a successive *prosecution*. *See Jones v. Thomas*, 491 U.S. 376, 381 (1989) (Double Jeopardy Clause protects against both successive prosecutions and multiple punishments for the same offense imposed in single proceeding). The district court tried Appellant before his court-martial but sentenced him after. The court-martial, another federal forum, *see Grafton*, 206 U.S at 352, tried him second for the "same offense,"[16] after he timely—but unsuc-

---

[16] Our disposition reaches only the specifications for possession of child pornography, which are wholly consumed by the possession charge at the district court: The civilian prosecution was for conduct spanning from August of 2010 to January 29, 2013, while the military specifications targeted Appellant's conduct from November 25, 2010 to January 11, 2012, and on November 14, 2010. As noted above, *see supra* p. 14, we leave it for the ACCA to address whether the possession charge at the district court is an LIO of the distribution specification, which falls within that time frame but may constitute separate conduct.

cessfully—sought dismissal of his court-martial charges because he had already been tried by a federal civilian court. While the district court ultimately dismissed the possession charge based on double jeopardy, that action does nothing to remedy the distinct violation of Appellant's constitutional protection against a second prosecution.

Regardless of what the district court did, the question is what the military justice system—which tried Appellant *after* he had been tried in the district court—could do without running afoul of double jeopardy. *Cf. Abney*, 431 U.S. at 662 ("[E]ven if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit."). Thus, while the ACCA viewed the wrong to remedy as multiple sentences, the Double Jeopardy Clause's prohibition is textually against "be[ing] twice put in jeopardy." U.S. Const. amend. V.

We agree with Appellant that the military judge erred in denying his motion to dismiss the possession specifications to bar retrial. Because the Double Jeopardy Clause bars successive prosecutions, the district court's dismissal of Count One did nothing to rectify the Government's violation of Appellant's right not to be twice *prosecuted* for the same offense. Having been "retried," the charges from the "retrial" must be dismissed. *Cf. Ex parte Nielsen*, 131 U.S. 176, 183–84 (1889) (Where "a constitutional immunity of the defendant was violated by the second trial and judgment . . . the party is entitled to be discharged from imprisonment.").

### III. Conclusion

The decision of the United States Army Court of Criminal Appeals is reversed in part as to the findings and as to the sentence. The two findings of guilty for the specifications of possession of child pornography are dismissed. The record and finding of guilty for the specification of distribution of child pornography are returned to the Judge Advocate General of the Army for remand to the ACCA for further review under Article 66, UCMJ, 10 U.S.C. § 866, and specific consideration and resolution of the question of whether the federal district court conviction for possessing child pornography is

16

or is not a lesser included offense of the distribution specification. If the ACCA determines that it is a lesser included offense, it shall dismiss the remaining charge and specification per the analysis herein. If the ACCA determines that the possession offense is not a lesser included offense and affirms the distribution conviction, it may reassess the sentence in view of the dismissal of the possession specifications. If the ACCA determines that it cannot reassess the sentence, the case will be remanded to an appropriate convening authority for a rehearing on the sentence.

Judge MAGGS, dissenting.

The Government prosecuted Appellant first in a U.S. District Court and then later at a general court-martial. Appellant argues that the second prosecution violated the Double Jeopardy Clause of the Fifth Amendment and asks that we set aside the findings of guilt on Charge II, Specifications 2, 3, and 4. In my view, under the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932), no Double Jeopardy Clause violation occurred. Accordingly, I would affirm the judgment of the United States Army Court of Criminal Appeals. I respectfully dissent.

## I. Specifications 3 and 4

The Double Jeopardy Clause provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Appellant contends that his trial by court-martial for the offenses alleged in Charge II, Specifications 3 and 4, violated this prohibition because he had already been tried for the same conduct in federal court. Specifications 3 and 4 alleged that Appellant possessed child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006),[1] while Count I of the federal

---

[1] Specification 3 of Charge II alleged that Appellant violated Article 134, UCMJ, in that he:

> [d]id, at or near Carlisle Barracks, Pennsylvania, on divers occasions between on or about 25 November 2010 and on or about 11 January 2012 knowingly and wrongfully possess 45 images of child pornography, as defined in 18 U.S.C. Section 2256, on a HP Pavilion Laptop computer, such conduct being of a nature to bring discredit upon the armed forces.

Specification 4 of Charge II alleged that Appellant violated Article 134, UCMJ, in that he "[d]id, at or near Carlisle Barracks, Pennsylvania, on or about 14 November 2010 knowingly and wrongfully possess 6 videos of child pornography, as defined in 18 U.S.C. Section 2256, on a Seagate Hard Drive, such conduct being of a nature to bring discredit upon the armed forces."

indictment alleged that he possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5).[2] Appellant asserts that the offenses are legally and factually duplicative because the periods of possession alleged in Specification 3 and 4 (i.e., between November 25, 2010, and January 11, 2012, for Specification 3, and "on or about 14 November 2010" for Specification 4) are wholly within the period of possession alleged in Count I (i.e., between August 2010 and January 29, 2013).

The Government, however, responds that under *Blockburger*, trying Appellant for both the UCMJ and Title 18 offenses did not violate the Double Jeopardy Clause. The Supreme Court held in *Blockburger* that the "applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. The Government contends that the charged § 2252A(a)(5) offense required proof of an element that the charged Article 134, UCMJ, offense did not (i.e., that the child pornography had been transported in or affected interstate or foreign commerce),[3] and the charged offenses under Article 134, UCMJ, required proof of an element

---

[2] Count I of the federal indictment charged Appellant with possessing child pornography "[b]etween about August 2010 and about January 29, 2013," in violation of 18 U.S.C. § 2252A(a)(2), (5).

[3] 18 U.S.C. § 2252A(a)(5)(B) provides:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; . . . shall be punished as provided in subsection (b).

that the charged § 2252A(a)(5) offense did not (i.e., that Appellant's conduct was service discrediting).[4] Appellant replies that, in applying the *Blockburger* test, this Court should ignore the "interstate or foreign commerce" element in § 2252A(a)(5) because this element is merely "jurisdictional," and that the Court should ignore the "service discrediting" element in Article 134, UCMJ, because possessing child pornography is inherently service discrediting. With these two elements ignored, Appellant argues, the offenses proscribed by § 2252A(a)(5) and Article 134, UCMJ, are the same.

I agree with the Government's position that the test announced in *Blockburger* governs this case. The Supreme Court held in *United States v. Dixon*, 509 U.S. 688 (1993), that the *Blockburger* elements test is the only test for determining whether offenses charged under two statutes should be considered the same offense for the purpose of the Double Jeopardy Clause. In *Dixon*, the Supreme Court overruled the portion of *Grady v. Corbin*, 495 U.S. 508 (1990), that had applied a "same conduct" test in addition to the *Blockburger* elements test. *Dixon*, 509 U.S. at 704. In addition, the Supreme Court in *Dixon* also specifically rejected arguments that other earlier cases, such as *Grafton v. United States*, 206 U.S. 333 (1907), had established alternative tests that might be applied. *Dixon*, 509 U.S. at 708 n.13 (explaining *Grafton* under "the traditional *Blockburger* elements test").

---

Subsection (b) then lists the permissible punishments, the details of which are not at issue here.

[4] Article 134, UCMJ, provides in relevant part:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

As quoted above, Specifications 3 and 4 alleged that Appellant's conduct was of "a nature to bring discredit upon the armed forces."

I further agree with the Government's argument about the application of the *Blockburger* test. Trying Appellant under 18 U.S.C. § 2252A(a)(5) and Article 134, UCMJ, did not violate the Double Jeopardy Clause because each offense required proof of an element that the other did not. I disagree with Appellant's position that we can ignore elements when applying the *Blockburger* test. Appellant has cited no case in which the Supreme Court or this Court has ignored elements of offenses when applying the *Blockburger* test,[5] and his arguments that we should ignore the interstate commerce element in § 2252A(a)(5) and the service discrediting element in Article 134, UCMJ, conflict with decisions of the Supreme Court, our Court, and other U.S. courts of appeals.

Appellant's assertion that we can ignore the interstate commerce element in § 2252A(a)(5) because it is merely a jurisdictional element is contrary to the Supreme Court's decision in *Pereira v. United States*, 347 U.S. 1 (1954), which did

---

[5] Appellant relies mainly on *Luna Torres v. Lynch*, 136 S. Ct. 1619 (2016), but that decision is not relevant to the issues in this case. *Luna Torres* did not concern or even mention the *Blockburger* test. Instead, the Supreme Court in *Luna Torres* was interpreting a provision of the Immigration and Naturalization Act that made aliens deportable for committing certain federal offenses and their state law analogues. The Supreme Court held that when comparing state laws to federal laws to determine whether they are analogous, the absence of a jurisdictional element in a state law statute is immaterial for the purpose of the Act. *Id.* at 1623. The Supreme Court said nothing about comparing federal statutes or about double jeopardy. Appellant also relies heavily on *Lewis v. United States*, 523 U.S. 155 (1998), which held that the federal Assimilated Crimes Act did not require a strict comparison of elements in deciding whether state crimes are punishable by federal enactments. That case also did not concern the Double Jeopardy Clause or application of the *Blockburger* test. Appellant also cites *United States v. Leonard*, 64 M.J. 381 (C.A.A.F. 2007), but that decision is also not relevant because it did not address the Double Jeopardy Clause or the *Blockburger* test. Instead, this Court held in *Leonard* that a military judge could determine the maximum punishment for an offense under Article 134, UCMJ, by reference to a federal statute that prohibited analogous misconduct even though the federal statute required proof of a jurisdictional element that the Article 134 offense did not. *Id.* at 383.

not ignore jurisdictional elements in applying the *Block-burger* test. In *Pereira*, the petitioners swindled a widow in a scheme that involved mailing a check from California to Texas. *Id.* at 5. The Supreme Court held that the evidence was sufficient to convict the petitioners of both mail fraud in violation of 18 U.S.C. § 1341 (1946), and transporting stolen property in violation of 18 U.S.C. § 2314 (1946). *Id.* at 8. Applying the *Blockburger* test, the Supreme Court also ruled that the petitioners could be convicted and punished under both statutes even though the charges arose from a single act or scheme because each statute required the government to prove facts not essential to the other.[6] *Id.* at 9. One of the differences that the Supreme Court identified was that the stolen property statute, unlike the mail fraud statute, required "transporting [property], or causing it to be transported in interstate commerce." *Id.* Another difference that the Supreme Court identified was that the mail fraud statute required use of the U.S. mail, while the stolen property statute did "not require proof that any specific means of transporting were used." *Id.* The Supreme Court thus did not disregard the elements in § 1341 and § 2314 that linked those statutes to subjects that Congress has constitutional power to regulate.

Appellant's argument that we can disregard the interstate commerce element in § 2252A(a)(5) when applying the *Block-burger* test also conflicts with this Court's decision in *United States v. Roderick*, 62 M.J. 425 (C.A.A.F. 2006). In *Roderick*, the appellant argued that the Double Jeopardy Clause prevented him from being convicted and punished for both using a minor to create sexually explicit photographs in violation of 18 U.S.C. § 2251(a) (2000), and taking indecent liberties with a minor by taking sexually explicit photographs in violation

---

[6] The Supreme Court has held that the Double Jeopardy Clause protects against successive prosecutions for the same offense and also against imposing multiple punishments for the same offense in a single trial. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977). The *Blockburger* test determines what is the "same offense" in both contexts. *See Dixon*, 509 U.S. at 696. ("In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the [*Blockburger*] 'same-elements' test, the double jeopardy bar applies.").

of Article 134, UCMJ. *Id.* at 432. Applying the *Blockburger* test, the Court rejected this argument on grounds that each offense required proof of an element that the other did not. *Id.* The Court reasoned that only the § 2251(a) charge required proof that the appellant had used materials that had passed in interstate commerce, while only the indecent liberties charge under Article 134, UCMJ, required proof that the appellant had taken the pictures with the intent to satisfy his sexual desires. *Id.* The appellant in *Roderick* contended that the Court should ignore the interstate commerce element because it was "nothing more than a 'limiting jurisdictional factor.'" *Id.* The Court rejected this argument because the appellant had not "identified any authority which would allow this court to disregard a statutory element of a crime during a multiplicity analysis simply because the same element was used by Congress as a jurisdictional hook and the element is readily established." *Id.* Again, Appellant here has not cited any decision of this Court that has ignored statutory elements in applying the *Blockburger* test.

In my view, the Court must follow *Pereira* and *Roderick* and consider the interstate commerce element in § 2252A(a)(5) when applying the *Blockburger* test. This element is indistinguishable from the interstate commerce element in § 2314 that the Supreme Court considered in *Pereira* and from the interstate commerce element in § 2251(a) that this Court considered in *Roderick*. Indeed, ignoring the interstate commerce element puts the Court in conflict not only with the Supreme Court and our precedent but also with the U.S. courts of appeals for every circuit that considers criminal cases. In applying the *Blockburger* test, the U.S. courts of appeals routinely cite statutory elements concerning interstate commerce as differences between federal offenses.[7]

---

[7] *See, e.g.*, *United States v. Patel*, 370 F.3d 108, 116 (1st Cir. 2004) (maliciously burning a building used in interstate commerce in violation of 18 U.S.C. § 844(i) and using fire to commit mail fraud in violation of 18 U.S.C. § 1341); *United States v. Maldonado-Rivera*, 922 F.2d 934, 982 (2d Cir. 1990) (stealing property from a federal insured bank in violation of 18 U.S.C. § 2113 and robbery affecting interstate commerce in violation of 18 U.S.C. § 1951); *United States v. Bencivengo*, 749 F.3d 205, 214–15 (3d Cir. 2014)

The question arises whether the present case might be distinguishable from *Pereira* on grounds that the *only* element in § 2252A(a)(5) that is not included in the Article 134, UCMJ, offenses is its interstate commerce element. At least one court has held that the *Blockburger* test should not apply when statutes differ *only* in their jurisdictional elements. In *United States v. Gibson*, 820 F.2d 692, 697–98 (5th Cir. 1987), the court held that a defendant who robbed a postal clerk in a post

(causing someone to travel in interstate commerce to carry on unlawful activity in violation of 18 U.S.C. § 1952 and obtaining of property from another under color of official right in violation of 18 U.S.C. § 1951); *United States v. Jones*, 797 F.2d 184, 186–87 (4th Cir. 1986) (receiving stolen property within a federal jurisdiction in violation of 18 U.S.C. § 662 and receiving stolen property that had moved in interstate commerce in violation of 18 U.S.C. § 2315); *United States v. Payan*, 992 F.2d 1387, 1392–93 (5th Cir. 1993) (aiding and abetting transportation of stolen goods in interstate commerce in violation of 18 U.S.C. § 2314 and conspiracy in violation of 18 U.S.C. § 371); *United States v. Metzger*, 778 F.2d 1195, 1210 (6th Cir. 1985) (destruction of property used in interstate commerce in violation of 18 U.S.C. § 841(i) and destruction of property using explosives that were transported in interstate commerce in violation of 18 U.S.C. § 841(d)); *United States v. Fox*, 941 F.2d 480, 487 (7th Cir. 1991) (possession by a felon of a firearm that had been transported in interstate commerce in violation of 18 U.S.C. § 922(g) and robbery of a bank with a dangerous weapon in violation of 18 U.S.C. § 2113); *United States v. Mann*, 701 F.3d 274, 285 (8th Cir. 2012) (aiding and abetting the use of a weapon of mass destruction affecting interstate commerce in violation of 18 U.S.C. § 2332a and using an explosive to destroy a vehicle used in interstate commerce in violation of 18 U.S.C. § 844(i)); *United States v. Karlic*, 997 F.2d 564, 571 (9th Cir. 1993) (attempting to damage property used in interstate commerce in violation of 18 U.S.C. § 844(i) and using an explosive in attempting to rob a bank in violation of 18 U.S.C. § 844(h)); *United States v. Huffman*, 595 F.2d 551, 554 (10th Cir. 1979) (theft of an interstate shipment in violation of 18 U.S.C. § 659 and theft of government property in violation of 18 U.S.C. § 641); *United States v. Williams*, 527 F.3d 1235, 1240–41 (11th Cir. 2008) (using interstate wire transmissions during a purported scheme or artifice to defraud in violation of 18 U.S.C. § 1343 and theft of federal funds in violation of 18 U.S.C. § 666); *United States v. Walker*, 545 F.3d 1081, 1085 (D.C. Cir. 2008) (possession by a felon of a firearm that had been transported in interstate commerce in violation of 18 U.S.C. § 922(g)(1) and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d)).

office could not be convicted under both 18 U.S.C. § 2111, which proscribes robbery within the special maritime and territorial jurisdiction of the United States, and 18 U.S.C. § 2114, which proscribes robbery of a person having lawful custody of mail. The court recognized that a "mechanical application of the *Blockburger* rule" would indicate that the two offenses were not the same because they contained different jurisdictional elements. *Id.* at 698. But the court ruled that allowing convictions on both charges would not "satisfy the intended purpose of the *Blockburger* test," which the court saw as allowing Congress to use similar statutes when necessary to address separate evils. *Id.* The court explained that "[a] jurisdictional fact, while a prerequisite to prosecution under a particular statute, is not in itself an evil that Congress seeks to combat." *Id.*

I find the reasoning of *Gibson* unpersuasive on several grounds and thus do not believe it provides a basis for distinguishing *Pereira* from the present case. First, nothing in *Pereira* or any subsequent Supreme Court decision suggests that courts should draw a distinction between a jurisdictional element and any other kind of element in applying the *Blockburger* test. If the Supreme Court in *Pereira* had thought that the interstate commerce element and the U.S. mail element should be ignored, it would not have cited them as differences. Second, in my view, this Court should follow the actual rule that the Supreme Court announced in *Blockburger* and should not speculate about the rule that the Supreme Court may have intended to announce. I note again that the Supreme Court made clear in *Dixon* that "*Blockburger* is the only test for 'same offence.' " 509 U.S. at 708 n.13. Finally, no other U.S. court of appeals appears to have followed *Gibson* on this point, while several others have specifically rejected its reasoning.[8] Even in the United States Court of Appeals for

---

[8] *See, e.g., United States v. Gladfelter,* 168 F.3d 1078, 1084 (8th Cir. 1999) (upholding convictions for robbery in the special and maritime jurisdiction of the United States in violation of 18 U.S.C. § 2111 and taking by force and violence a motor vehicle that has been transported in interstate commerce in violation of 18 U.S.C. § 2119); *United States v. Hairston*, 64 F.3d 491, 495 (9th Cir. 1995) (upholding convictions for robbery in the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C.

the Fifth Circuit, a subsequent case has questioned *Gibson*'s rationale. *See United States v. Agofsky*, 458 F.3d 369, 372 (5th Cir. 2006) (following *Gibson* as a matter of Fifth Circuit precedent while expressing concern with its reasoning). For all of these reasons, the Court should not disregard the interstate commerce element in § 2252A(a)(5) when applying the *Blockburger* test.

In my view, the Court also should not disregard the "service discrediting" element of the Article 134, UCMJ, offense when applying the *Blockburger* test. As noted above, Appellant argues that this Court can ignore this element because it is not truly a distinct element when the offense is possession of child pornography. Appellant reasons that possession of child pornography is inherently service discrediting, and thus stating this element separately does nothing to distinguish the Article 134, UCMJ, offenses from the § 2252A(a)(5) offense. I disagree with this reasoning because this Court has rejected the proposition that possession of child pornography is inherently service discrediting. In *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011), a court-martial found the appellant guilty of possessing child pornography in violation of Article 134, UCMJ, and the Court of Criminal Appeals (CCA) affirmed. This Court reversed and remanded because the CCA's opinion suggested that "the CCA may have conclusively presumed that [the appellant's] conduct was of a nature to bring discredit upon the armed forces because [the appellant] possessed child pornography." *Id.* at 167. The Court held that such a conclusive presumption was improper and that the CCA had to perform a factual sufficiency review. *Id.* Accordingly, Appellant's argument for ignoring the service discrediting element of Article 134, UCMJ, when applying the *Blockburger* test lacks merit.

---

§ 2111 and robbery of United States property in violation of 18 U.S.C. § 2114); *McGann v. United States*, 261 F.2d 956, 957 (4th Cir. 1958) (citing *Pereira* and upholding convictions for robbery in the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. § 2111 and robbery of federally insured bank in violation of 18 U.S.C. § 2113), *cert. denied*, 359 U.S. 974 (1959).

## II. Specification 2

Appellant argues that his trial by court-martial on Charge II, Specification 2, violated the Double Jeopardy Clause because he had already been tried in federal court on a lesser included offense, namely, the possession charge in Count I of the federal indictment.[9] Specification 2 alleged that Appellant *distributed* six child pornography images in violation of Article 134, UCMJ.[10] Count I alleged that he *possessed* the same six images. Appellant contends that Count I in the federal indictment is a lesser included offense of Specification 2 of Charge II at the court-martial because he necessarily possessed the images that he distributed.

The Government does not dispute that the Double Jeopardy Clause prohibits trying an accused for a greater offense after first having tried the accused for a lesser offense. A lesser included offense, by definition, does not include any element that the greater offense does not. *See Dixon*, 509 U.S. at 705 (citing "the common proposition, entirely in accord with *Blockburger*, that prosecution for a greater offense . . . bars prosecution for a lesser included offense"). The Government, however, responds that the possession charge under § 2252A(a)(5) is not a lesser included offense of the offense charged under Article 134, UCMJ, because § 2252A(a)(5) requires proof of an element (i.e., transportation in or affecting interstate commerce) that the Article 134, UCMJ, offense does not.

---

[9] The record raises a question about whether Appellant preserved this argument when he pleaded guilty. But given that the Government has not argued waiver and that this argument does not concern any legal principles not already discussed, I will assume without deciding that the argument was not waived.

[10] Specification 2 alleged that Appellant violated Article 134, UCMJ, in that he:

> did, at or near Carlisle Barracks, Pennsylvania, on divers occasions between on or about 30 November 2010 and on or about 6 December 2010 knowingly and wrongfully distribute 6 images of child pornography, as defined in 18 U.S.C. Section 2256, on a HP Pavilion Laptop computer, such conduct being of a nature to bring discredit upon the armed forces.

I agree with the Government that § 2252A(a)(5) is not a lesser included offense and therefore that no double jeopardy violation occurred. To convict Appellant of the charge in Count I in the U.S. District Court, the Government had to prove that the images that Appellant possessed had been transported in or affected interstate commerce. The Government did not have to prove this element at the court-martial in Specification 2. Therefore, the offense in Count I was not a lesser included offense of the offense in Specification 2.[11] Again, Appellant has cited no applicable authority for ignoring the interstate commerce element.

### III. Conclusion

The *Blockburger* test sometimes produces controversial results because it allows the federal government to charge an accused under two very similar but not identical federal statutes. *See Lewis*, 523 U.S. at 177 (Scalia, J., concurring) (recognizing that "*Blockburger*'s emphasis on the formal elements of crimes causes it to *deny* the 'sameness' of some quite similar offenses because of trivial differences in the way they are defined"). This case is perhaps an example. But we cannot address this concern by ignoring statutory elements. As the Supreme Court itself said in *Blockburger*, if prosecution for two very similar federal offenses "be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction." 284 U.S. at 305.

---

[11] I do not reach an alternative argument that the § 2252A(a)(5) possession offense is not a lesser included offense of the Article 134, UCMJ, distribution offense because a person theoretically might be able to distribute images without possessing them. *See United States v. Rice*, 78 M.J. 649, 654 n.10 (A. Ct. Crim. App. 2018) (citing cases that address this issue).